LEXIE; Sopkovich, Admr., Appellant,

v.

OHIO EDISON COMPANY, Appellee.

[Cite as *Lexie v. Ohio Edison Co.* (2000), 140 Ohio App.3d 578.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 99–T–0172.

Decided Nov. 20, 2000.

*Martin F. White Co., L.P.A., Martin F. White* and *James J. Crisan,* for appellant.

*Harrington, Hoppe & Mitchell, Ltd.,* and *Kevin P. Murphy,* for appellee.

CHRISTLEY, Judge.

This is an accelerated calendar appeal. Appellant, Carol A. Sopkovich, the administrator of the estate of Michael J. Lexie, appeals from a final judgment of the Trumbull County Court of Common Pleas granting appellee, Ohio Edison Company, summary judgment. For the reasons that follow, we affirm the decision of the trial court.

At the time of the accident, Michael J. Lexie ("Lexie") was employed by Morakis Sons Industrial Painting Company, Inc. ("Morakis Sons"). He sustained serious injuries after coming into contact with high voltage electricity while painting an electric substation owned and operated by appellee. Appellee had hired Morakis Sons, an independent contractor, to perform the painting work on a number of structures, including the substation in Masury, Ohio, where the accident occurred.

As a result of his injuries, Lexie filed a complaint in the Trumbull County Court of Common Pleas on July 14, 1989. In the complaint, Lexie alleged, among other things, that appellee had acted negligently in failing to (1) provide a safe place of employment, (2) eliminate known hazards, (3) adequately supervise the work activities, (4) install proper safety devices, and (5) deenergize the electrical lines involved in the accident. Appellee filed an answer on August 4, 1989, denying the allegations.

In February 1991, appellee filed a motion for summary judgment in which it argued that it owed no duty to Lexie because he had been working for an independent contractor when the accident occurred and because painting electric substations was an inherently dangerous activity. In addition, appellee argued that it had not actively participated in the painting because Morakis Sons had directed and controlled the work of the painting crew. On June 26, 1991, Lexie filed a brief in opposition in which he argued that appellee's control over the activation and deactivation of the electrical conductors had amounted to active participation by appellee in the painting of the Masury substation.

The trial court denied appellee's motion in September 1991 and set the case for trial. However, after numerous delays, appellee filed a motion with the trial court in August 1995, asking the court to reconsider the denial of its motion for summary judgment.[1] Appellant did not file a response to appellee's motion to reconsider. The trial court subsequently issued a judgment entry granting summary judgment in favor of appellee.

Appellant filed an appeal of the trial court's decision with this court. In reversing the judgment of the trial court, we determined that there were two separate ways in which a duty of care to an independent contractor under an active-participation analysis could be created: (1) active participation through the direction or control of the performance of the work activities and (2) active participation through the exertion or retention of control over a critical variable in the working environment. After reviewing the record, we held that appellee was entitled to summary judgment on the question of whether it had directed or controlled the performance of Lexie's job activities. However, we also held that appellee was not entitled to summary judgment as to the entire duty of care owed to an independent contractor because a question remained as to whether appellee had created a duty of care by retaining and exerting control over a critical aspect of the working environment. *Lexie v. Ohio Edison Co.* (Dec. 13, 1996), Trumbull App. No. 96–T–5384, unreported, 1996 WL 761223.

---

1. The record shows that Lexie died during this delay and that appellant was substituted as the plaintiff in the action.

We subsequently found our judgment on the issue of active participation in conflict with the Ninth Appellate District and its decision in *DeHass v. Ohio Edison Co.* (Sept. 15, 1993), Summit App. No. 15970, unreported, 1993 WL 347059. As a result, we certified the conflict to the Supreme Court of Ohio for a determination.

In affirming our decision, the Supreme Court held that "active participation giving rise to a duty of care may be found to exist where a property owner either directs or exercises control over the work activities of the independent contractor's employees, or where the owner retains or exercises control over a critical variable in the workplace." *Sopkovich v. Ohio Edison Co.* (1998), 81 Ohio St.3d 628, 643, 693 N.E.2d 233, 243. Based on this holding, the Supreme Court went on to conclude that the evidentiary materials in the record demonstrated that appellee did actively participate in the work by retaining and exercising control over a critical aspect of the job and that, as a result, appellee owed the independent contractor's employee, Lexie, a duty of care. *Id.*

Specifically, the Supreme Court found that appellee's "participation in [the activity] was clearly limited to the tasks of de-electrification of certain conductors in the work area and the dissemination of correct information [to the independent contractor] concerning which conductors were energized and which had been de-activated." *Id.* Accordingly, appellee's ultimate liability, if any, could only be predicated on a breach of one or both of the assumed duties. If appellee "properly de-activated the conductors it had promised to de-activate, and *accurately* communicated with [Morakis Sons] and the painters as to which conductors were activated and which were not," the company discharged any duty of care owed to Lexie. (Emphasis added.) *Id.* at 643, 693 N.E.2d at 244.

On remand, appellee filed a new motion for summary judgment on February 19, 1999, arguing that although it may have owed Lexie a duty of care, there was no evidence that the company had breached that duty. Appellant countered by filing a brief in opposition to summary judgment. According to appellant, the methods employed by appellee in communicating the necessary information to the paint crew were inadequate to inform them of which areas of the substation were deactivated and safe; hence, the communication was *inaccurate*. Appellant also maintained that instead of verbally communicating to the independent contractor and the paint crew which areas were energized, appellee should have marked those areas with yellow tape or flags as the company had done on previous jobs on which Lexie had worked.

The trial court granted appellee's motion for summary judgment on October 22, 1999. In doing so, the trial court concluded that the undisputed evidence showed that appellee had deactivated the conductors it had promised to deactivate and that it had *accurately* communicated this information both to the

independent contractor, Morakis Sons, and in turn, to the workers painting the substation.

From this judgment entry, appellant filed a timely notice of appeal with this court, asserting the following assignment of error for our review:

"The trial court erred to the prejudice of plaintiff-appellant by granting summary judgment in favor of the defendant-appellee."

Under this single assignment of error, appellant claims that the trial court erred in granting appellee summary judgment because there were questions of fact with respect to whether appellee had breached its duty to *accurately* communicate which areas of the substations were deenergized. It is appellant's position that the "vague verbal instructions" given by an employee of appellee who was on the job site for this purpose, without more, were inadequate to inform the painters of the independent contractor of precisely which sections were safe to work within. Essentially, appellant is arguing that while Lexie was given correct information on which areas had been deenergized, the information was confusing, ineffective, and not in compliance with certain codes, practices, or customs.

At the outset, we note that summary judgment is proper when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); *Leibreich v. A.J. Refrigeration, Inc.* (1993), 67 Ohio St.3d 266, 268, 617 N.E.2d 1068, 1070–1071.

Material facts are those facts that might affect the outcome of the suit under the governing law of the case. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123, 1126, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212–213. To determine what constitutes a genuine issue, the court must decide whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. *Turner*, 67 Ohio St.3d at 340, 617 N.E.2d at 1126.

The party seeking summary judgment on the grounds that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264. The moving party must be able to point specifically to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that

the nonmoving party has no evidence to support the nonmoving party's claim. *Id.* at 293, 662 N.E.2d at 273–274.

■ If this initial burden is met, the nonmoving party has a reciprocal burden to respond, by affidavit or as otherwise provided in the rule, in an effort to demonstrate that there is a genuine issue of fact suitable for trial. *Id.* If the nonmoving party fails to do so, the trial court may enter summary judgment against that party if appropriate. *Id.*

■ As noted by the Supreme Court in *Sopkovich*, if appellee properly deactivated the conductors it had promised to deactivate, and it *accurately* communicated this information to the independent contractor's painters, appellee discharged any duty of care owed to Lexie. *Sopkovich* at 643–644, 693 N.E.2d at 243–244. However, if appellee failed to deactivate the conductors it had promised to deactivate, or if the company *inaccurately* informed the independent contractor as to which conductors were or were not deactivated, appellee would have breached its duty to Lexie. After an exhaustive review of the record, this court concludes that appellee did meet its duty of care owed to the independent contractor and Lexie.[2]

The record shows that as a result of the nature of the system, appellee could not shut off the entire flow of electricity through the substation during the time the painters were working. Appellee, however, was able to shut down portions of the substation for a limited period of time without disrupting the service of its customers. To accomplish this, a representative of appellee, Patrick Campbell ("Campbell"), would consult with Morakis Sons's on-site supervisor, James Morakis ("Morakis"). Campbell would inform Morakis of which electrical lines were still active and which ones had been deactivated. Morakis, in turn, would then convey this information to the painters. Campbell then remained at the substation during the painting to answer any further questions.

On the day of the accident, it is undisputed that Lexie was instructed by Morakis to paint several I-beams in a deenergized area located approximately thirty to forty feet above the ground. Morakis testified that Campbell had told him what areas were energized and which areas were not, and that he relayed this information to his employees.

Moreover, prior to resuming work after his lunch break, Lexie had a conversation with Campbell as to whether or not it was safe to paint in a particular area.

---

2. Because appellant does not challenge the trial court's conclusion that appellee had properly deactivated the conductors the electric company said it would, we will confine our discussion to the issue of whether appellee accurately communicated this information to Morakis and/or the painters.

Campbell informed Lexie that the area had been deenergized, and that he should avoid a nearby section of the substation because it was still active.

While no one saw the accident, evidence in the record shows that people at the substation saw Lexie working in the deactivated area. However, when Lexie fell to the ground after being shocked, his body landed under an area that had been designated as hot. Although he does not remember the incident, it is apparent that Lexie mistakenly entered into an area that was energized.

There was undisputed evidence establishing that appellee had communicated with Morakis, and even Lexie, which areas were energized and which areas were not. Accordingly, there is no dispute of fact over whether appellee had properly deenergized the areas which it had promised, or over whether this information was *accurately* communicated to Morakis and his crew, in particular Lexie. Further, appellant does not contend that Lexie did not know which areas had been deactivated prior to resuming work after lunch. Indeed, Lexie's only explanation for the accident was that he had become "confused."

Appellant's position is that the Supreme Court's use of the term *accurately* must be interpreted to mean that appellee should have conveyed the information in a better way and that the electric company should have taken further precautions to avoid serious injury. We, however, decline to interpret the term *accurately* to mean anything other than *correctly*.

The immediate issue involves only the duty that exists between an owner/general contractor and an independent contractor. That duty is arguably significantly different from what it would be if Lexie had been an employee of appellee and not of Morakis Sons.

Whether or not there was a more effective way of communicating the necessary information to the independent contractor or his painters is ultimately immaterial. There was no dispute that Lexie and his employer, Morakis Sons, were made aware of the activated and deactivated areas on several occasions. The fact that Lexie was subsequently injured, by itself, does not automatically demonstrate a breach of duty by appellee to the independent contractor or its employees.

Based on the foregoing analysis, appellant's sole assignment of error is without merit. As a result, the judgment of the trial court is affirmed.

*Judgment affirmed.*

FORD, P.J., concurs.

WILLIAM M. O'NEILL, J., dissents.