OPINION
This appeal is taken from a final judgment of the Lake County Court of Common Pleas. Appellant, Consumers Ohio Water Company, appeals from the trial court's decision granting appellee, Lake County Board of Commissioners ("the Board"), summary judgment. For the following reasons, we reverse the judgment of the trial court, and remand the matter so that the trial court can enter judgment for appellant.
On June 16, 1975 and May 10, 1976, respectively, the parties entered into purchase agreements prepared by appellee in which the Board agreed to sell appellant title to its water supply system located in specified areas of Painesville and Concord Townships.[1] In return, appellant agreed to provide water service to Lake County residents living in the designated area at rates set in the agreement. To enable the company to comply with its obligations under the agreements, appellant was permitted to construct additional facilities to maintain or extend service as needed. The total cost of the purchases was $200,110.
Incorporated into the contracts were two separate options wherein appellee reserved the right to repurchase the water supply system, including any additions built by appellant. Under the first option, appellee was required to provide appellant with written notice of its intent to repurchase the facilities one-year before exercising the option. The second option, on the other hand, was automatically exercisable by appellee if it or another public entity acquired the water source used to service the designated areas. In the event this occurred, appellee had ninety days in which to repurchase the facilities from appellant.[2] Both options were exercisable any time after one-year following the date of the agreements and before December 31, 1999.
In April 1998, appellee provided appellant written notice that it intended to exercise its option to repurchase the water supply system in accordance with the agreements.[3] However, a dispute soon arose between the parties over how much appellee would pay appellant for the facilities.
As a result, on September 4, 1998, appellee filed a declaratory judgment action in the Lake County Court of Common Pleas asking the court to find that the same process for determining the system's value should be used no matter which option was exercised. On December 3, 1998, appellant filed an answer denying the allegations contained in the complaint and petitioned the court to find that different pricing schemes applied to the separate options.
Appellant also filed a motion for summary judgment in which the company argued that it was entitled to judgment as a matter of law because there was no genuine issue with respect to a material fact. According to appellant, because appellee exercised option (a) under the second paragraph of the agreements, appellee had to pay appellant the fair market value for the entire water supply system, not just the newly constructed facilities.
Appellee filed its response and a cross-motion for summary judgment on January 4, 1999. In its cross-motion for summary judgment, appellee maintained that a reasonable construction of the contracts demonstrated that the Board was only required to pay appellant the original purchase price, no matter which option was exercised. Appellee further argued that a review of the circumstances surrounding the transactions when they were originally entered into supported such an interpretation.
Over the next several months, both parties filed additional briefs for and against their respective positions. In an abbreviated judgment entry, the trial court overruled appellant's motion for summary judgment on May 11, 1999. However, in the same entry, the trial court granted appellee's cross-motion for summary judgment. In doing so, the court determined that there were no genuine issues of material fact, and that appellee was entitled to judgment as a matter of law. Accordingly, the trial court ordered that appellee be allowed to repurchase the water supply system for $200,110.[4]
From this judgment entry, appellant filed a timely notice of appeal with this court. The company now asserts the following two assignments of error for our review:
 "[1.] The Trial Court erred in overruling appellant's motion for summary judgment.
 "[2.] The Trial Court erred in granting appellee's motion for summary judgment."
Because appellant's assigned errors are interrelated, we will consider them in a consolidated fashion. Appellant maintains that the terms of the contracts are clear and unambiguous on their face with respect to the pricing of the water supply system, and that separate values could be assigned depending on the option exercised. It is appellant's position that if appellee chose to proceed, as it did, under the first option, contained in subsection 2(a), the contracts call for the fair market value to be paid as opposed to the original contract price. Appellant suggests that by granting appellee's motion for summary judgment, the trial court interpreted the agreements in a manner inconsistent with the clear intent of the parties.
At the outset, we note that summary judgment is proper when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come but to one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); Leibreich v. A.J. Refrigeration, Inc. (1993),67 Ohio St.3d 266, 268.
Material facts are those facts that might affect the outcome of the suit under the governing law of the case. Turner v. Turner (1993),67 Ohio St.3d 337, 340, citing Anderson v. Liberty Lobby, Inc. (1986),477 U.S. 242, 248. To determine what constitutes a genuine issue, the court must decide whether the evidence presents a sufficient disagreement to require submission to a jury, or whether it is so one-sided that one party must prevail as a matter of law. Turner at 340.
The party seeking summary judgment on the grounds that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and the burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280. The moving party must be able to point specifically to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim. Id. at 293.
If this initial burden is met, the nonmoving party has a reciprocal burden to respond, by affidavit or as otherwise provided in the rule, in an effort to demonstrate that there is a genuine issue of fact suitable for trial. Id. If the nonmoving party fails to do so, the trial court may enter summary judgment against that party if appropriate. Id.
The rules regarding contract construction are well settled in Ohio. A court's primary objective in interpreting a written contract is to ascertain the intent of the parties as expressed in the terms of the agreement. Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos. (1998),86 Ohio St.3d 270, 273; Berger v. Am. Bldg. Inspection, Inc. (May 2, 1997), Lake App. No. 96-L-114, unreported, at 9, 1997 Ohio App. LEXIS 1794. Thus, a contract should be construed in a manner to give effect to the intentions of the parties. Hamilton Ins. Serv. at 273.
"The agreement of parties to a written contract is to be ascertained from the language of the instrument itself, and there can be no implication inconsistent with the express terms thereof." Id. at 274, citing Latina v. Woodpath Dev. Co. (1991), 57 Ohio St.3d 212, 214. See, also Kelly v. Med. Life Ins. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus; Convenient Food Mart, Inc. v. Con. Inc. (Sept. 30, 1996), Lake App. No. 95-L-093, unreported, at 9, 1996 Ohio App. LEXIS 4338 ("The intent of the parties is presumed to reside in the language employed in the agreement.").
Moreover, if a contract is clear and unambiguous, then its interpretation is a matter of law, and there is no issue of fact to be determined. Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241,245-246; Davis v. Safe Auto Ins. Co. (Mar. 31, 2000), Ashtabula App. No. 98-A-0103, unreported, at 12, 2000 Ohio App. LEXIS 1385. However, if a provision cannot be determined from the four corners of the agreement, a factual determination of intent may be necessary to ascertain the provision's meaning. Inland Refuse Transfer Co. v. Browning-Ferris Indus.of Ohio, Inc. (1984), 15 Ohio St.3d 321, 322; Yardmaster, Inc. v. Kish
(Sept. 25, 1998), Trumbull App. No. 97-T-0160, unreported, at 5, 1998 Ohio App. LEXIS 4543.
In making such a factual determination, the court may use extrinsic evidence to facilitate the inquiry. Kelly at 132. Extrinsic evidence, however, is inadmissible when it is sought to contradict the express terms of the written agreement. Shifrin v. Forest City Ent., Inc.
(1992), 64 Ohio St.3d 635, 638 ("If no ambiguity appears on the face of the instrument, parole evidence cannot be considered in an effort to demonstrate such an ambiguity."); Yardmaster at 5.
Applying those well established principles to the case at bar, we must determine whether the options contained in paragraph two of the agreements are ambiguous, and if they are, whether the trial court improperly considered extrinsic evidence when granting appellee summary judgment. Both parties concede that the language of the agreements is clear and unambiguous. Nevertheless, they disagree on the application of the relevant provisions, arguing respectively that the placement of the provisions within the agreements determines their applicability.
After reviewing the contracts, we conclude that, although the options are grouped under the same paragraph, the parties clearly intended to apply different valuation methods for each option. As a result, the trial court erred in granting appellee summary judgment.
Appellee maintains that a reasonable construction of the contracts can lead to only one conclusion; i.e., that the Board is only required to pay appellant $200,110 for the original system, which represents the original purchase price. Appellee believes that any other interpretation would result in a "manifestly absurd result" due to the fact that appellant did not pay fair market value in 1975 or 1976. We disagree.
The trial court's judgment entry does not indicate what, if any, extrinsic evidence the court considered before making its decision. Nevertheless, because we determine that the agreement is unambiguous, this fact is ultimately immaterial to the outcome in the instant matter.
Subsection 2(a) clearly states that "the option [is] exercisable subject to the provisions of paragraph 4 hereof[.]" Paragraph four of the agreements set out the procedure to use in the event the parties cannot reach a consensus as to the purchase price. Thus, subsection 2(a) must necessarily be read in conjunction with paragraph four and obviously contemplates at least some negotiation between the parties with respect to the value of the system.[5]
Subsection 2(b), on the other hand, does not contain similar limiting language. Instead, it provides three alternative pricing options listed as 2(b)(i) through 2(b)(iii). These alternative pricing options concern the original water supply system purchased by appellant from appellee and any newly constructed facilities.
Appellee claims that the intent of the parties was to use those three valuation methods no matter which option was exercised. In support, appellee argues that if the parties had intended for paragraph 2(b)(i)-(iii) to apply only to the automatic option, they would have used the disjunctive "or" as opposed to the conjunctive "and" when joining subsections 2(a) and 2(b).
The construction of the agreements, however, clearly contradicts appellee's interpretation. First, subsections 2(b)(i)-(iii) are clearly included as part of subsection 2(b). They are incorporated under that provision by the sentence immediately preceding the valuation method, which states: "[T]he purchase price to the Board for said facilities and the other conditions governing the purchase of said facilities shall be as follows[.]"
Furthermore, there is nothing within that phrase suggesting that the subsequent valuation methods also apply to subsection 2(a). In fact, there is language in subsection 2(b)(iii) referring to the other methods in conjunction with subsection 2(b). It states in relevant part that:
 "* * * any water mains or lines or portions or appurtenances thereof which the Company may have installed at its own expense or purchased in the Township Area as replacements or relocations of the facilities referred to in subparagraphs (i) and (ii) of this subparagraph (b), the purchase price of all of the Company's right, title and interest therein shall be at their value determined as of the date of the Board's notice to exercise its option to purchase such facilities." (Emphasis added.)
The provisions concerning the two options express the intent of the parties in clear and intelligible language. Moreover, we find nothing in the agreements that would justify a contrary interpretation. Accordingly, the only conclusion that can be drawn from the contracts is that the parties intended to apply separate valuation schemes for the two options. To imply that appellee was only required to pay $200,110 for the entire original water supply system would directly contradict the express terms of the agreements.[6]
Therefore, because we conclude that the contracts are clear and unambiguous, summary judgment in favor of appellee was inappropriate. As a result, appellant's second assignment of error has merit. Furthermore, based on the parties' agreements, appellant was entitled to summary judgment as a matter of law. Thus, appellant's first assignment of error also has merit. The judgment of the trial court is reversed, and the matter is remanded so that the trial court can enter judgment for appellant with respect to those portions of the water supply system included in the 1975 and 1976 agreements.
 ______________________________ JUDITH A. CHRISTLEY, JUDGE
FORD, P.J., NADER, J., concur.
[1] The material terms of the contracts are identical with the exception of a typographical error in the 1975 agreement. Thus, we will not differentiate between the two contracts when referring to the options unless necessary.
[2] Paragraph two of the agreements reads as follows:
 "2. The Company hereby agrees to and does grant the Board the following options exercisable after one (1) year following the date of this Agreement and prior to December 31, 1999:
 "(a) the option exercisable subject to the provisions of paragraph 4 hereof upon one (1) year's advance written notice, to acquire all supply, treatment, storage, transmissions (except as provided in paragraph 3 hereof) and other facilities located in the Township Area which are used to furnish water service in said area, and
 "(b) the option automatically to acquire such property in the Township Area upon the acquisition by the Board or any other public body or agency of the supply, treatment, storage, transmission and other facilities located outside the Township Area, which are used to furnish water service in such areas; provided, however, that if the Board within ninety (90) days of written notice of the happening of such event, fails or elects not to exercise said option, the Company may sell or otherwise dispose of such property in said Township Area to any person, firm, association, or corporation upon such terms and conditions as it deems best. The purchase price to the Board for said facilities and the other conditions governing the purchase of said facilities shall be as follows:
 "(i) With respect to the water mains and lines and other waterworks facilities and appurtenances in the Township Area purchased by the Company from the Board, the price shall be the same as that at which the Board sold such facilities to the Company.
 "(ii) With respect to water mains and lines and other waterworks facilities and appurtenances in the Township Area to the extent financed by any person, firm, association, or corporation other than the Company since the date of this Agreement, the purchase price of all of the Company's right title and interest therein shall be Ten Dollars ($10.00); provided, however, the Board shall assume and satisfy the Company's commitments to collect front foot connection charges with respect thereto and, in accordance with the terms of their respective agreements with the Company, to remit the funds so collected directly to the person, firm, association, or corporation which financed any of said facilities. The Company agrees to submit the form of such agreements to the Board for its approval, which will not be unreasonably withheld.
 "(iii) With respect to water mains and lines, other waterworks facilities or portions or appurtenances thereof which the Company may have installed at its expense or purchased in the Township Area since the date of this Agreement, and any water mains or lines or portions or appurtenances thereof which the Company may have installed at its own expense or purchased in the Township Area as replacements or relocations of the facilities referred to in subparagraphs (i) and (ii) of this subparagraph (b), the purchase price of all of the Company's right, title and interest therein shall be at their fair value determined as of the date of the Board's notice to exercise its option to purchase such facilities."
[3] Both parties agree that appellee exercised the buy-back option under subsection 2(a).
[4] The trial court's judgment entry appears to encompass the combined pre-1976 and post-1976 water supply system. However, after looking at appellee's complaint, it is obvious that the Board was only seeking a declaratory judgment with respect to those portions of the system included in the original agreements. Thus, the trial court's judgment would not apply to those facilities constructed after 1976, as there does not seem to be any dispute that the facilities, if any, constructed after 1976 would be acquired at current market value.
[5] We would like to note that paragraph four also applies to subsection (b) of paragraph two in that even if appellee were to exercise the second option, the parties still had to reach an agreement with respect to the fair market value of those facilities constructed by appellant after the parties entered into the purchase contracts. Paragraph four states in relevant part:
 "The Company agrees that if upon the exercise by the Board of either of the options contained in paragraph 2 above, agreement cannot be reached between the Company and the Board as to the amount due the Company thereunder[.] * * *"
[6] One may argue that the agreements must be ambiguous because the parties are interpreting the relevant provisions in very different ways. However, when interpretation is properly limited to the plain meaning of the words used, and parole evidence is not considered, the intent of the parties is clear.