OPINIONS OF THE SUPREME COURT OF OHIO
     The full texts of the opinions of the Supreme Court of
Ohio are being transmitted electronically beginning May 27,
1992, pursuant to a pilot project implemented by Chief Justice
Thomas J. Moyer.
     Please call any errors to the attention of the Reporter's
Office of the Supreme Court of Ohio.  Attention:  Walter S.
Kobalka, Reporter, or Deborah J. Barrett, Administrative
Assistant.  Tel.:  (614) 466-4961; in Ohio 1-800-826-9010.
Your comments on this pilot project are also welcome.
     NOTE:  Corrections may be made by the Supreme Court to the
full texts of the opinions after they have been released
electronically to the public.  The reader is therefore advised
to check the bound volumes of Ohio St.3d published by West
Publishing Company for the final versions of these opinions.
The advance sheets to Ohio St.3d will also contain the volume
and page numbers where the opinions will be found in the bound
volumes of the Ohio Official Reports.


Leibreich et al., Appellants, v. A.J. Refrigeration, Inc.,
Appellee, et al.
[Cite as Leibreich v. A.J. Refrigeration, Inc. (1993),
Ohio St.3d     .]
Torts -- Products liability -- Motion for summary judgment in
     products liability case involving custom-built
     refrigerated truck improperly granted, when
     (No. 92-973 -- Submitted April 21, 1993 -- Decided
September 15, 1993.)
     Appeal from the Court of Appeals for Hamilton County, No.
C-910241.
     On May 12, 1987, a truck driver for the Fred J. Murphy
Company ("Murphy Company"), a wholesale florist company, drove
a refrigerated delivery truck to a retail florist shop in
Cincinnati, Ohio.  The florist shop was located at the top of
an incline.  When the driver parked the truck he put the manual
transmission into neutral and engaged the parking brake.  He
left the engine running because the engine operated the
refrigeration unit.  The driver had been instructed by the
Murphy Company to leave the engine running on hot days to
prevent damage to the flowers in the truck.
     While the driver was in the florist shop, the truck began
moving.  Informed of this by a person in the store, the driver
ran out and saw the truck rolling down the driveway.  Before he
could reach the vehicle, it struck two adults, Mary Beth
Leibreich and Susan Krauss, and two children, Rebecca Leibreich
and Charles Richard Frederickson VanOrnum, and pinned them
against a stone wall.  The driver got into the truck,
disengaged the brake and moved the truck away. Each of the
people struck by the truck suffered serious and permanent
injuries.
     The delivery truck was a custom-built refrigerated truck
which Richard F. Murphy, Jr., president of the Murphy Company,
ordered in 1984 from Mike Albert Leasing, Inc. ("Mike
Albert").  When he ordered the truck, Murphy requested that it
contain a manual transmission and a diesel engine.  The
delivery truck had a 1984 Chevrolet truck cab and chassis; an
insulated box-type body manufactured by Hercules Manufacturing

Company; a refrigeration unit manufactured by Temp Con Industries, Inc.; and a number of smaller components including lights and a bumper.  The Mike Albert agent purchased the chassis and cab on his own and contracted with appellee A.J. Refrigeration, Inc. ("A.J. Refrigeration") for selection and installation of the refrigeration components.  A.J. Refrigeration is in the business of installing refrigeration units on vehicles.

The appellants1 brought suit against Jake Sweeney Chevrolet-Imports, Inc., d.b.a. Jake Sweeney Chevrolet ("Jake Sweeney"), Mike Albert, and A.J. Refrigeration.  In their complaint, appellants indicated they had settled and released their claims against the Murphy Company and its driver. Appellants claimed that Jake Sweeney negligently adjusted or failed to adjust the emergency brake so that the brake did not hold the vehicle in place.  They also claimed Mike Albert and A.J. Refrigeration designed, manufactured and supplied a truck that was not fit for its intended use as an intracounty florist delivery truck.  Specifically they alleged that the design was negligent because it required the engine to be running to maintain refrigeration of the flowers, which meant that the manual transmission could not act as a secondary braking system.  Appellants claimed that given the use which was intended, Mike Albert and A.J. Refrigeration should have replaced the ratchet-style parking brake with a braking system which could not be partially engaged and would have held the truck stationary "even in a condition of misadjustment equal to the one present in the vehicle on the date of the accident." Appellants also claimed Mike Albert and A.J. Refrigeration were negligent in failing to warn that the truck should not be left unattended with the engine running and that special care had to be taken to maintain and engage the parking brake if the truck was left unattended with the engine running.  In addition to the negligence claims, appellants alleged that Mike Albert and A.J. Refrigeration were subject to strict liability in tort because the delivery truck's design benefits were outweighed by the inherent risks of the design and that the truck was unreasonably dangerous absent specific warnings.

Appellants settled their claims against Jake Sweeney and Mike Albert.  A.J. Refrigeration filed a motion for summary judgment in which it claimed:   (1) it did not sell, manufacture or assemble the truck so as to be subject to a claim of strict liability in tort; (2) it had no duty to warn of any potential problems because of its limited role in the preparation of the truck; and (3) even if it could be liable under products liability law, the acts of the driver in leaving the engine running and unattended constituted an intervening and superseding cause of appellants' injuries.

The trial court granted, without opinion, the motion for summary judgment as to all of the claims against A.J. Refrigeration.  The court of appeals affirmed the judgment of the trial court on the ground that the actions of the driver were the intervening and superseding causes of the accident. The court determined that it "need not address the appellants' argument regarding A.J. Refrigeration's status as a designer and assembler of the truck."

This cause is now before this court pursuant to the

allowance of a motion to certify the record.

Montgomery, Rennie & Jonson, George D. Jonson and Kelly Carbetta Scandy; Graydon, Head & Ritchey and Barbara Scott Bison; Keating, Muething & Klekamp and Louis F. Gilligan, for appellants.

McIntosh, McIntosh & Knabe and Thomas A. Mack, for appellee.

Wright, J.  This case presents the issue of whether summary judgment for A.J. Refrigeration was appropriate either (1) because the truck driver's actions in leaving the vehicle running and unattended were unforeseeable, intervening, and superseding causes of the appellants' injuries, (2) because A.J. Refrigeration is not a manufacturer or assembler of the truck so as to be subject to strict liability in tort or (3) because A.J. Refrigeration had no duty to warn users of the truck.  For the reasons stated below we find that the trial court erred in granting A.J. Refrigeration's motion for summary judgment.

Under Civ. R. 56, summary judgment is proper when:  "(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."  Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

We have repeatedly stated that trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party.  Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 604 N.E.2d 138.  On the other hand, we do not wish to discourage this procedure where a plaintiff fails to respond with evidence supporting the essentials of its claim.  Summary judgment is appropriate when the nonmoving party does not "produce evidence on any issue for which that party bears the burden of production at trial." (Citation omitted.)  Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus.

                                    I
We have recognized that the existence of intervening and superseding causes of injury can be a defense to actions brought under theories of both negligence and strict liability in tort.  Mudrich v. Standard Oil Co. (1950), 153 Ohio St. 31, 41 O.O. 117, 90 N.E.2d 859; R.H. Macy & Co., Inc. v. Otis Elevator Co. (1990), 51 Ohio St.3d 108, 554 N.E.2d 1313, syllabus.

We have also repeatedly recognized that the issue of intervening causation generally presents factual issues to be decided by the trier of fact.  Merchants Mut. Ins. Co. v. Baker (1984), 15 Ohio St. 3d 316, 318, 15 OBR 444, 446, 473 N.E.2d 827, 828-829; Cascone v. Herb Kay Co. (1983), 6 Ohio St. 3d 155, 160, 6 OBR 209, 214, 451 N.E.2d 815, 820; Mudrich, supra, 153 Ohio St. at 40, 41 O.O. at 121, 90 N.E.2d at 864.  The determination of intervening causation "involves a weighing of

the evidence, and an application of the appropriate law to such facts, a function normally to be carried out by the trier of the facts." Cascone, supra, 6 Ohio St.3d at 160, 6 OBR at 214, 451 N.E.2d at 820. In Cascone we established the test to be used to determine whether the intervening act was foreseeable and therefore a consequence of the original negligent act or whether the intervening act operates to absolve the original actor. "The test *** is whether the original and successive acts may be joined together as a whole, linking each of the actors as to the liability, or whether there is a new and independent act or cause which intervenes and thereby absolves the original negligent actor." Id. at 160, 6 OBR at 214, 451 N.E.2d at 819 (citing Mudrich, supra, and Mouse v. Cent. Sav. & Trust Co. [1929], 120 Ohio St. 599, 167 N.E. 868).

In R.H. Macy, supra, we approved of the use of a jury instruction on superseding causation which stated in part: "'The causal connection of the first act of negligence is broken and superseded by the second, only if the intervening negligent act is both new and independent. The term "independent" means the absence of any connection or relationship of cause and effect between the original and subsequent act of negligence. The term "new" means that the second act of negligence could not reasonably have been foreseen.'" (Emphasis sic.) Id., 51 Ohio St.3d at 111, 554 N.E.2d at 1317, quoting 1 Ohio jury Instructions (1983), Section 11.30. Thus, the key determination "'[w]hether an intervening act breaks the causal connection between negligence and injury depends upon whether that intervening cause was reasonably foreseeable by the one who was guilty of the negligence.'" (Emphasis deleted.) R.H. Macy, supra, at 110, 554 N.E.2d at 1316, quoting Mudrich, supra, 153 Ohio St. at 39, 41 O.O. at 121, 90 N.E.2d at 863.

In the present case, the court of appeals saw "no reason to conclude that it was foreseeable that [the driver] would leave the truck running and unattended during deliveries." Appellants presented evidence that A.J. Refrigeration knew the following: (1) the truck was intended for the purpose of delivering flowers in the Cincinnati area, which is, in places, quite hilly; (2) the flowers needed to be refrigerated to forty degrees; (3) the refrigeration unit could not operate without the engine running; (4) the temperature inside the truck would rise ten degrees in ten to fifteen minutes if the refrigeration unit was not operating; (5) in order to leave the engine running while the truck was unoccupied, the manual transmission had to be placed in neutral; (6) with the transmission in neutral the only braking system was the ratchet-type emergency brake. In light of this evidence, we cannot agree with the court of appeals that no reasonable mind could conclude that it was foreseeable that the driver would leave the engine running when he left the truck to make a delivery. Therefore we reverse the judgment of the court of appeals on this issue.

## II

The court of appeals did not address the question of whether A.J. Refrigeration is a manufacturer or assembler so as to be subject to strict liability in tort. A.J. Refrigeration based its motion for summary judgment on the issue of intervening causation and also on the claim that it was not a

manufacturer or assembler and was not, therefore, strictly liable in tort. The trial court granted the motion without opinion. Therefore we must address this latter issue on appeal because it is a possible independent ground for the trial court's decision.

A.J. Refrigeration argues that it is not a manufacturer of refrigerated delivery trucks but is only engaged in the installation and servicing of refrigeration units. Since there is no allegation that the refrigeration unit was defective or negligently installed, A.J. Refrigeration claims it is not liable for appellants' injuries.

Appellants argue that A.J. Refrigeration played the most decisive role in creating the delivery truck and that it created a new product, allegedly a defective product, through its design and assembly of components. In support of this allegation, appellants introduced evidence that: (1) A.J. Refrigeration is in the business of installing refrigeration units in vehicles; (2) Mike Albert had previously contracted with A.J. Refrigeration to design and build components; (3) Mike Albert dealt with A.J. Refrigeration as a modifier and relied on it to point out needed safety changes; (4) A.J. Refrigeration made decisions about the type of insulated body and refrigeration unit to install; (5) Mike Albert relied on A.J. Refrigeration's design expertise to assemble the requisite components to achieve the desired function of the vehicle; (6) Mike Albert expected A.J. Refrigeration to make any safety changes or recommend safety changes necessitated by the modifications requested by the customer; (7) Mike Albert and A.J. Refrigeration agreed to the modifications which A.J. Refrigeration would make; (8) A.J. Refrigeration contracted with Hercules Manufacturing Company to mount the insulated body on the chassis; (9) A.J. Refrigeration then installed the refrigeration unit and completed the modifications; (10) following assembly, A.J. Refrigeration tested the unit by leaving the engine running and the truck unattended with the manual transmission in neutral.

This cause of action arose prior to the effective date of the Product Liability Act, R.C. 2307.71 through 2307.80. However, as we noted in Anderson v. Olmsted Util. Equip., Inc. (1991), 60 Ohio St.3d 124, 573 N.E.2d 626, although this legislation is not technically applicable to cases arising before it was enacted, it "lends insight" into our analysis of whether A.J. Refrigeration may be a manufacturer for purposes of imposition of strict liability in tort. Id. at 127, 573 N.E.2d at 629. R.C. 2307.71(I) provides:

"'Manufacturer' means a person engaged in a business to design, formulate, produce, create, make, construct, assemble, or rebuild a product or a component of a product." (Emphasis added.)

Under this definition an entity is a manufacturer if it assembles components into a design which creates a product. As a manufacturer, it can be subject to strict liability in tort if the product so created is defective and unreasonably dangerous.

Support for the view that a manufacturer who puts nondefective components together to make a defective product is subject to strict liability in tort is also implicit in our

discussion of the liability of a manufacturer of a nondefective component in Temple v. Wean, supra.  In Temple we said: "[T]he obligation that generates the duty to warn does not extend to the speculative anticipation of how manufactured components, not in and of themselves dangerous or defective, can become potentially dangerous dependent upon the nature of their integration into a unit designed and assembled by another." (Emphasis added.)  Id., 50 Ohio St.2d at 324, 4 O.O.3d at 470, 364 N.E.2d at 272.

This is precisely the allegation which appellants make as to the role of A.J. Refrigeration in creating the refrigerated delivery truck.  They claim that A.J. Refrigeration integrated the nondefective components of the cab-chassis and refrigeration unit into a dangerous and defective delivery truck.  Given A.J. Refrigeration's role in the design and assembly of the truck, appellants claim that A.J. Refrigeration is responsible for ensuring that the delivery truck was safe for its intended use.  Appellants argue that A.J. Refrigeration should have recommmended and included in the design a different braking system which would have held the truck stationary when it was left unattended with the engine running.

The evidence on the issue of whether A.J. Refrigeration was a manufacturer for purposes of strict liability in tort supports competing inferences.  Determining how much input and final control A.J. Refrigeration had over the design and assembly process is a question for the jury to determine.  Therefore granting summary judgment on this issue was inappropriate.

### III

With regard to the remaining portion of the motion for summary judgment which addressed appellants' claims that A.J. Refrigeration failed to warn users of the truck, A.J. Refrigeration makes two arguments.2  First, it relies on the previously quoted language in Temple v. Wean concerning the liability of manufacturers of nondefective components.  Second, it argues that the dangers of leaving a truck unattended with the transmission in neutral and the engine running are so obvious that A.J. Refrigeration had no duty to warn.

A.J. Refrigeration's reliance on Temple v. Wean is misplaced.  This argument would apply to the manufacturers of the cab-chassis, the insulated body, and the refrigeration unit because none of those components, standing alone, was defective and none of those manufacturers participated in the design and assembly of the final product, the refrigerated delivery truck.  The question of whether the refrigerated delivery truck was defective and dangerous arises as a result of the assembly of these components into the final product, coupled with an understanding of the truck's intended use.  It is A.J. Refrigeration's alleged unique role in the design and assembly of the final product which is at issue in this case.

A.J. Refrigeration's second argument, that it had no duty to provide a warning, is based on 2 Restatement of the Law 2d, Torts (1965), Section 402 A, Comment j, which states:

"Directions or Warning.  In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use. ***

"But a seller is not required to warn with respect to products, *** when the danger, or potentiality of danger, is generally known and recognized. ***"

A.J. Refrigeration argues that the danger of leaving the truck unattended with the engine running and the parking brake either improperly engaged or improperly serviced was generally known and recognized so that A.J. Refrigeration was not required to give any warning. Appellants argue that A.J. Refrigeration knew or should have known that to use the truck for its intended purpose the truck would be left unattended with the engine running. Given this situation, appellants argue a specific warning was required, including a warning that special care needed to be exercised in maintaining and engaging the parking brake since it functioned as the sole braking system when the truck was left unattended with the engine running. As with appellants' other claims, the competing inferences raised by the evidence, as discussed more particularly in Parts I and II above, make summary judgment inappropriate on appellants' claims alleging A.J. Refrigeration's failure to warn.

IV

Although this case presents a number of close questions, especially the claims alleging a duty to warn, for the reasons stated above, we find that the evidence, when construed most strongly in appellants' favor, is sufficient to preclude summary judgment on appellants' claims against A.J. Refrigeration. Therefore, we reverse the judgment below and remand the cause to the trial court for further proceedings.

(Judgment reversed
and cause remanded.)

Moyer, C.J., A.W. Sweeney, Douglas, Resnick, F.E. Sweeney and Pfeifer, JJ., concur.

FOOTNOTE:

1 The appellants are Mary Beth Leibreich, Patrick Leibreich (individually and as parent and guardian of Rebecca Leibreich), Susan Krauss, Robert Krauss (individually and as parent and guardian of Shannon Marie Krauss, Robert Andrew Krauss and Jeffrey Roger Krauss), Charles W. VanOrnum and Swann E. Fredrickson (individually and as parent and guardian of Charles Richard Fredrickson VanOrnum).

2 Appellants alleged a failure to warn under both negligence and strict liability theories. In their complaint appellants claimed:

"39. Mike Albert Leasing, Inc. and A.J. Refrigeration, Inc. were negligent in their failure to warn potential users of the delivery vehicle that the delivery vehicle should not be left unattended with the engine running and the transmission in neutral. Mike Albert Leasing, Inc. and A.J. Refrigeration, Inc. were also negligent in failing to warn potential users of the delivery vehicle, that if the vehicle was left unattended with the engine running and the transmission in neutral, the vehicle had only one parking system and that the parking system was a ratchet-type parking brake and, further that special care had to be taken to ensure the parking brake was in adjustment and was fully engaged before the vehicle was left unattended.
"***

"44.  The delivery vehicle was defective because it was unreasonably dangerous absent warnings that the vehicle should not be left unattended with the engine running and the transmission in neutral.

"45.  The delivery vehicle was defective because it was unreasonably dangerous absent warnings that should the vehicle be left unattended with the engine running and the transmission in neutral, the vehicle had only one parking system and that the parking system was a ratchet-type parking brake and, further that special care had to be taken to ensure the parking brake was in adjustment and was fully engaged before the vehicle was left unattended."

In Crislip v. TCH Liquidating Co. (1990), 52 Ohio St.3d 251, 556 N.E.2d 1177, paragraph three of the syllabus, we held that "[t]he standard imposed upon the defendant in a strict liability claim grounded upon an inadequate warning is the same as that imposed in a negligence claim based upon inadequate warning."  That standard is "that the manufacturer knew, or should have known, in the exercise of ordinary care, of the risk or hazard about which it failed to warn" and "the manufacturer failed to take the precautions that a reasonable person would take in presenting the product to the public." Id. at 257, 556 N.E.2d at 1182-1183.

Douglas, J., concurring.    I concur with the majority in its disposition of this case.  I write separately to point out that we are reviewing the judgment of the court of appeals -- not the judgment of the trial court.  This is important to note because the majority, in Part II of its opinion, says that "[t]he court of appeals did not address the question of whether A.J. Refrigeration is a manufacturer or assembler so as to be subject to strict liability in tort.  * * *"  Notwithstanding this finding, the majority then says, without benefit of opinion or judgment by the court of appeals on the issue, that "* * * we must address this latter issue on appeal because it is a possible independent ground for the trial court's decision."

This all seems a bit strange, given that we were recently admonished that "[t]his court, however, is constitutionally limited to deciding only issues directly presented by an individual case."  Gallimore v. Children's Hosp. Med. Ctr. (1993), 67 Ohio St.3d   ,   ,   N.E.2d   ,   (Wright, J., dissenting).  Clearly, by the majority's own admission in the case at bar, the issue being decided in Part II of the opinion cannot be properly before us because the court of appeals never even considered the issue.

I concur.