ANDREWS et al, Appellants,

v.

DAVIS et al., Appellees;  Alfieri et al.

[Cite as *Andrews v. Davis* (2000), 140 Ohio App.3d 707.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–000350.

Decided Dec. 29, 2000.

*Michael E. Cassity* and *Robin J. Levine,* for appellants.

*Brian D. Goldwasser,* for appellees.

WINKLER, Judge.

This appeal is taken from the trial court's entry of summary judgment in favor of defendants-appellees Eric D. Davis, Raymond Miller, and Golden Hawk, Inc., in a negligence action. For the reasons that follow, we affirm.

## I. Factual Background

On November 27, 1996, Davis was operating a tractor-trailer owned by Miller's company, Golden Hawk, Inc. As Davis crossed into Ohio from Kentucky and traveled north on Interstate 71, his truck began to lose power. Davis pulled the truck into a construction zone where he manually checked the fuel level with a stick and made sure that the fuel filter was not leaking. After determining that "everything was fine," Davis got back into the truck and continued driving north on the interstate.

Three to four miles later, as Davis approached a hill, he determined that the truck did not have enough power to "pull the hill," so he pulled over to the emergency lane on the right side of the interstate and engaged the truck's hazard lights. Davis parked the truck "way off" of the right side of the emergency lane, leaving only "a little bit of his tire" on the paved portion of the emergency lane. The engine remained running while the truck was parked.

A "samaritan" van operated by a service that offered free roadside assistance eventually arrived on the scene. The van operator, Mark Gaffin, testified that Davis's truck was "idling rough." After ensuring that there was fuel in the truck's tanks, Gaffin determined that there may have been water in the fuel, "which [wa]s not too uncommon in the wintertime for diesels." Gaffin put a "degel" additive in the fuel tanks and told Davis to let the truck run for a while. As Gaffin began to leave the scene fifteen to twenty minutes later, he told Davis

that he would come back, and that if the truck was not running any better by then, he would call a tow truck for Davis. Davis then got back into his truck and waited for Gaffin to return.

As Davis waited for Gaffin, the truck stopped running. Davis testified that thirty to forty-five minutes had elapsed from the time that he had originally parked the truck off of the emergency lane. Shortly after the truck stopped running, Davis testified, he "heard noises, squealing noises and stuff. And I looked in my mirror and I saw [plaintiff-appellant Rene Andrews's] car out of control, coming right straight for my truck."

Prior to the accident, Andrews had been traveling on Red Bank Road, directly behind a Coca Cola truck. The truck was moving slowly up a hill leading to the entrance of the interstate. Andrews moved into the left lane in front of defendant Tracie Alfieri to pass the Coca Cola truck, and she then moved back into the right lane. Another motorist, Michael Grisi, had been travelling behind Andrews. Grisi testified that Andrews's lane change caused Alfieri to slow down, and that Alfieri began to gesture at Andrews. Alfieri then moved into the right lane behind Andrews and followed her onto the entrance ramp.

As Andrews neared the end of the entrance ramp, she remained in the same lane, which eventually provided access to the next exit on the interstate. Alfieri moved one lane to the left into the first regular lane of interstate traffic. Alfieri then pulled next to Andrews and made obscene gestures. Andrews responded by moving one lane to the left, behind Alfieri. But just as Andrews was completing her lane change, Alfieri applied her brakes suddenly and with such force that the nose of her car dipped down. Grisi and another motorist, David Bahler, testified that there was no traffic or other obstruction that would have warranted this abrupt action. It was their belief that Alfieri had intentionally given Andrews a "brake job," or had intentionally applied her brakes in an abrupt manner, for the sole purpose of startling Andrews and causing her to slow down or change lanes.

In response to Alfieri's sudden application of her brakes, Andrews used her own brakes and jerked her steering wheel to the right in an effort to avoid a collision with Alfieri. But this caused her to lose control of her car, which veered to the right and crashed into Davis's disabled truck. Upon impact, Andrews was thrown from her car, and she sustained serious injuries.

Andrews was pregnant at the time. Shortly after the accident, surgeons removed from Andrews's damaged uterus her twenty-five-week-old unborn child, which had bled to death after the impact of the crash caused Andrews's placenta to separate from her uterus.

Alfieri was charged with aggravated vehicle homicide, for recklessly causing the unlawful termination of Andrew's pregnancy while operating a motor vehicle,

and with aggravated vehicular assault, for recklessly causing serious physical harm to Andrews while operating her motor vehicle. After a jury trial, Alfieri was convicted of both offenses. We affirmed Alfieri's convictions on appeal. See *State v. Alfieri* (1998), 132 Ohio App.3d 69, 724 N.E.2d 477.

## II. Procedural Background

Andrews and her husband filed suit against Alfieri, Davis, Miller, Golden Hawk, Inc., Andrews's insurance carrier, and the manufacturer of her car. Davis, Miller, and Golden Hawk Inc., filed a motion for summary judgment. The Andrewses responded with their own motion for partial summary judgment, claiming that the appellees were liable on grounds of negligence or negligence *per se.* The trial court granted summary judgment in favor of the appellees and denied the Andrewses' motion. This appeal followed.

## III. Assignments of Error

In their first assignment of error, the Andrewses assert that the trial court erred in granting summary judgment to the appellees on the ground that Alfieri's negligence was an intervening or superseding act that had broken the causal connection between any negligence by Davis and Rene Andrews's injury. In their second assignment of error, the Andrewses claim that the trial court erred in denying their motion for partial summary judgment because Davis's actions constituted negligence or negligence *per se.*

A summary-judgment motion is appropriately granted if the court, viewing the evidence in the light most favorable to the nonmoving party, determines that no genuine issue of material fact remains to be litigated and that the evidence demonstrates that reasonable minds can only come to a conclusion that is adverse to the party opposing the motion. Civ.R. 56(C). Appellate review of summary judgment is *de novo.* See *Wille v. Hunkar Laboratories, Inc.* (Dec. 31, 1998), Hamilton App. No. C–971107, unreported, 1998 WL 906415, discretionary appeal not allowed (1999), 85 Ohio St.3d 1480, 709 N.E.2d 851.

In order to establish actionable negligence, a plaintiff must demonstrate the existence of a duty, a breach of that duty, and an injury proximately caused by the breach. As a motorist, Davis had a duty in this case to use ordinary care, both for his own safety and for the safety of others. See, *e.g.,* 1 Ohio Jury Instructions (2000), Section 17.30(2), at 200.

According to the record, it is undisputed that, as Davis realized that his truck would not be able to "pull the hill" on the interstate, he removed his truck from the interstate's lanes of travel and parked it off of the right side of the emergency lane of the interstate. In fact, only "a little bit of his tire" remained on the paved portion of the emergency lane. Davis's actions in removing his

disabled truck from the interstate to the emergency lane were entirely reasonable under the circumstances. By parking his truck off the "main traveled part" of the interstate, Davis fulfilled his duty of due care. See, *e.g., Campbell v. Daniels Motor Freight, Inc.* (1966), 8 Ohio App.2d 244, 37 O.O.2d 240, 221 N.E.2d 470; R.C. 4511.66. Because the Andrewses failed to set forth facts demonstrating that Davis in any way breached his duty of care, we hold that the trial court properly granted summary judgment in favor of the appellees. See *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095.

■ Furthermore, even if we assume, as the trial court did, that Davis was "arguably negligent," it is clear from the record that the actions of Alfieri broke any causal connection between Davis's actions and Andrews's injury as a matter of law because no reasonably prudent person would have been able to foresee Alfieri's actions in giving Andrews a "brake job." See *Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.* (1995), 73 Ohio St.3d 609, 619–620, 653 N.E.2d 661, 670; *Fed. Steel & Wire Corp. v. Ruhlin Constr. Co.* (1989), 45 Ohio St.3d 171, 174–175, 543 N.E.2d 769, 773.

Because Alfieri's actions were "a new and independent" event, their intervention in the episode absolved Davis of any liability for negligence. See *Queen City, supra,* 73 Ohio St.3d at 619–620, 653 N.E.2d at 670, citing *Cascone v. Herb Kay Co.* (1983), 6 Ohio St.3d 155, 160, 6 OBR 209, 214, 451 N.E.2d 815, 819. Alfieri's actions were "new" in that Davis could not have reasonably foreseen Alfieri's reckless conduct in slamming on her brakes, thereby forcing Andrews to lose control of her car and careen into Davis's disabled truck. And Alfieri's actions were "independent" in that Alfieri's "brake job" resulted not from Davis's disabled truck being parked in the emergency lane, but from Alfieri's own "road rage." See *id.,* citing *Leibreich v. A.J. Refrigeration, Inc.* (1993), 67 Ohio St.3d 266, 269, 617 N.E.2d 1068, 1072.

We overrule both of the Andrewses' assignments of error and affirm the judgment of the trial court.[1]

*Judgment affirmed.*

GORMAN, P.J., concurs.

PAINTER, J., concurs separately.

---

1. Because we affirm the trial court's judgment, we decline to address the appellees' cross-assignment of error. See R.C. 2505.22.

PAINTER, Judge, concurring separately.

I concur separately to emphasize my agreement with the majority that summary judgment was properly granted because Davis was not negligent. That observation is all that is required to affirm the trial court's decision.

To speculate, as the majority does, on the disposition of the appeal under the false assumption that Davis was negligent is unnecessary. This speculation calls for an application of the doctrine of intervening/superseding cause. But the Ohio Supreme Court has "repeatedly recognized that the issue of intervening causation generally presents factual issues to be decided by the trier of fact."[2] Strangely enough, the majority cites that very case (in which the Supreme Court reversed this court) for the opposite proposition.[3] I am not at all certain that the foreseeability, or rather lack thereof, of a specific type of conduct—in this case, the "brake job"—is what is contemplated by the superseding-cause doctrine. It might in fact be foreseeable under circumstances similar to those here that someone would be forced off the road in some manner. For this reason, where some degree of negligence may be apportioned to a defendant, summary judgment is not proper.[4]

I concur with the majority that the trial court's decision to grant summary judgment must be affirmed because Davis was not negligent. My reason for so deciding ends there.

---

2. See *Leibreich v. A.J. Refrigeration, Inc.* (1993), 67 Ohio St.3d 266, 269, 617 N.E.2d 1068, 1071. See, also, *Cascone v. Herb Kay Co.* (1983), 6 Ohio St.3d 155, 160, 6 OBR 209, 214, 451 N.E.2d 815, 820; *Adams v. Lift–A–Loft Corp.* (Nov. 12, 1999), S.D.Ohio No. C–3–94–170, unreported, 1999 WL 33105610.

3. See *Leibreich, supra.*

4. See *Murray v. ROC Lakeside, Inc.* (Feb. 18, 1999), Cuyahoga App. No. 75091, unreported, 1999 WL 125962; *Falcoski v. Fisher* (Nov. 13, 1997), Cuyahoga App. No. 71828, unreported, 1997 WL 711258; *Stopar v. Constantine* (Jan. 30, 1992), Cuyahoga App. No. 59697, unreported, 1992 WL 14387; *Smith v. Wood* (Mar. 10, 1989), Muskingum App. No. 88–27, unreported, 1989 WL 28742; *Ascherman v. Ohio Dept. of Transp.* (1992), 63 Ohio Misc.2d 316, 629 N.E.2d 1094.