Willard WHEELER, et al., Plaintiffs

v.

ESTES EXPRESS LINES,
et al., Defendants.

Jeffrey Rogge, Plaintiff

v.

Estes Express Lines, et al., Defendants.

Case Nos. 3:13CV1174, 3:13CV1227.

United States District Court,
N.D. Ohio,
Western Division.

Filed Oct. 16, 2014.

Michael J. Leizerman & Rena M. Leizerman, Toledo, OH, Jan H. Stamm, Barer,

Karper, Stamm & Robinson, Wauseon, OH, for Plaintiff, Jeffrey Rogge.

Brad A. Everhardt, Mark P. Seitzinger, Ritter, Robinson, McCready & James, Michael J. Leizerman & Rena M. Leizerman, Toledo, OH, Jan H. Stamm, Barer, Karper, Stamm & Robinson, Wauseon, OH, Stephen M. Gurstein, Gurstein, Koltonow, Gursten, Christensen & Raitt, Farmington Hills, MI, for Plaintiffs, Willard Wheeler and Terrolyn Cambell–Wheeler.

Bradley A. Wright, Randall J. Moore, Ronald B. Lee, Tiffany M.H. Sovik, Roetzel & Andress, Akron, OH, Amy L. Butler, Roetzel & Andress, Toledo, OH, for Defendants, Estes Express Lines & Kendall Ray.

## ORDER

JAMES G. CARR, Senior District Judge.

These consolidated personal-injury cases arise out of an accident involving a disabled truck, a tow truck assisting the disabled truck, and a passing semi-truck on the Ohio Turnpike.

Plaintiffs Willard Wheeler, driver of the disabled truck, and Jeffrey Rogge, tow truck operator, allege that, while their trucks were on the Turnpike shoulder, defendant Kendall Ray drove his semi-truck onto the shoulder, where its trailer sideswiped Wheeler's truck. Wheeler's truck then shot forward, striking Wheeler and pinning Rogge between his tow truck and Wheeler's truck.

Plaintiffs allege Ray's negligent driving caused them severe, permanent injuries, necessitating—in Rogge's case—the amputation of both his legs. They contend defendant Estes Express Lines, Ray's employer, is vicariously liable for his negligence.

Jurisdiction is proper under 28 U.S.C. § 1332(a)(1).[1]

Pending is the plaintiffs' motion for partial summary judgment. (Doc. 32).[2] For the following reasons, I grant the motion in part and deny it in part.

## Background

### A. The Crash

The accident occurred on August 14, 2012, shortly before midnight. Wheeler, driving a GMC Topkick truck eastbound on the Turnpike, ran out of gas. He pulled out of the right-hand lane and completely onto the shoulder, where he activated his hazard lights. However, Wheeler did not place reflective triangles behind his vehicle, as an applicable federal regulation required him to do.[3]

An Ohio Highway Patrol trooper noticed Wheeler's disabled vehicle and pulled over to help. After calling for a tow truck, the trooper left.

About forty-five minutes after Wheeler had pulled onto the shoulder, Rogge arrived in his tow truck. The truck was white and had bright, reflective paint or tape on its sides.

Rogge worked for a company having a contract with the Ohio Turnpike Commission to service disabled vehicles. Rogge's employer had received documents from the Commission instructing tow-truck drivers to: 1) "if possible ... use your vehicle as a barrier vehicle when working on the turnpike"; and 2) park the "tow vehicle 100 feet behind [the] work area." (Doc. 37–4 at 20).[4]

Because Rogge was expecting to tow a disabled truck, he parked in front of Wheeler's truck. Rogge then activated his flashers and the bright emergency lights on the top of his truck. He did not place reflective triangles behind his or Wheeler's truck.

Roughly fifteen minutes passed between Rogge's arrival and the accident.

Shortly before the accident, Ray was eastbound in the left-hand lane of traffic. Ray testified that, after passing two vehicles, he started merging into the right lane when he saw Wheeler's truck:

Q: And did you see the truck on the shoulder before you actually began the merge, before you physically turned the steering wheel?

A: Yeah. I started to merge in when I saw that truck was sitting there on the shoulder.

Q: Did you turn your steering wheel first, see the truck first, or do they both happen about the same time?

---

1. Rogge is an Ohio citizen, Wheeler a Michigan citizen, Ray a Kentucky citizen, and Estes a Virginia citizen.

2. Unless otherwise noted, citations to the docket refer to filings in case no. 3:13CV1227.

3. The regulation states an operator of a commercial motor vehicle must, "as soon as practicable, but in any event within 10 minutes," place reflective triangles behind his vehicle when the "vehicle is stopped upon the traveled portion of the shoulder of a highway for any cause other than necessary traffic stops." 49 C.F.R. § 392.22(a). The operator must place the triangles at intervals of ten, one hundred, and 200 feet from the vehicle. 49 C.F.R. § 392.22(b)(2)(v).

4. The defense refers to these materials as part of Rogge's employer's "contract" with the Turnpike Commission. (Doc. 37 at 18). Although Rogge does not dispute that characterization, the documents do not appear to be part of a contract. Rather, the materials appear to be supplementary safety or "best practices" information distributed to Turnpike contractors. In any event the proper characterization of the documents is not material to the disposition of plaintiffs' motion.

A: About the same time.

(Doc. 32–1 at 8).

Although Ray saw Wheeler's truck before or at the same time he started his merge, he did not consider remaining in the left lane. However, Ray claimed if he had "seen triangles or anything like that sitting out there, I never would have merged over in that lane." (*Id.*). This was so, Ray explained, because the triangles would have signified a "broke-down truck" on the shoulder. (*Id.*).

Ray testified: 1) he saw Wheeler's tail lights "flashing"; and 2) he could tell the truck on the shoulder "was a big truck." (*Id.* at 10, 16). When Ray completed his merge, he "noticed the truck was awful close to the white [fog] line." (*Id.* at 9). But Ray ultimately acknowledged Wheeler's and Rogge's trucks were completely on the shoulder.

Ray checked his mirrors to see if he could merge into the left lane, but there were headlights behind him. When Ray turned his attention back to the road, "it was too late" and he "was already on the truck." (*Id.*). Ray admitted "he went off the road and hit the truck," and he agreed he "shouldn't have hit the truck off the road." (*Id.* at 4, 11).

Eyewitness Christopher Sweatt had been driving a semi-truck in front of Ray's truck for ten to twelve miles before the accident. During that time Ray's truck "was kind of all over the road," was "weaving severely back and forth," and even veered "off in[to] the grass" adjacent to the right-hand shoulder. (Doc. 32–6 at 9).

After Ray's truck passed him in the left lane, Sweatt saw "bright" lights coming from at least one truck on the right-hand shoulder. (*Id.* at 14). Sweatt merged into the left lane, but Ray's truck continued traveling in the right lane for fifteen to twenty seconds before it collided with the truck.

Sweatt did not see Ray's brake lights activate until Ray had passed the crash site.

## B. Expert Testimony

The parties have retained numerous expert witnesses to opine on, *inter alia,* what caused the crash.

Accident-reconstruction expert James B. Crawford prepared a report for the plaintiffs.

According to Crawford, the lights on top of Rogge's tow truck would have been in Ray's field of vision as soon as Ray crested a hill "nearly a mile west" of the crash site. (Doc. 32–7 at 13). He also opined "there were no vehicles in the left lane close enough to pose a hazard" and prevent Ray from merging into the left lane before the accident. (*Id.*).

Finally, Crawford opined Ray was traveling roughly seventy miles per hour when the crash happened—an unsafe speed, given the two trucks on the shoulder—and did not begin braking until four seconds after the crash.

Plaintiffs also retained James S. Sobek, a conspicuity expert.[5]

Based on his expertise in physics, mathematics, accident reconstruction, and vehicle dynamics, Sobek opined Rogge's lights "were visible from Mr. Ray's perspective from a distance of 5000 feet." (Doc. 14 at 40).

Sobek also concluded plaintiffs' trucks "had been in Mr. Ray's field of vision for nearly one mile, a period of nearly 49

---

5. According to dictionary.com, "conspicuity" can mean "easily seen or noticed; readily visible or observable: a conspicuous error" and "attracting special attention[.]" http://goo.gl/6KPacH

seconds at the posted speed limit of 70 miles per hour." (*Id.* at 41).

For their part, defendants retained experts Andrew Sievers, Charles Veppert, John Miller, and Robert Nocivelli.

As relevant here, these experts opined Wheeler and Rogge had a duty to place reflective triangles behind Wheeler's truck. They testified the triangles would have: 1) specifically alerted drivers there was a disabled commercial vehicle on the shoulder; and 2) provided that warning earlier, thereby permitting a driver like Ray more time to react appropriately.

Nocivelli and Miller also opined Rogge's failure to park behind Wheeler's truck contributed to the crash and the severity of Rogge's injuries.

### Discussion

Plaintiffs contend there is no genuine dispute of material fact as to whether: 1) Ray was negligent *per se* for failing to drive in marked-lanes, maintain an assured clear distance ahead, and comply with Ohio's move-over law; 2) Estes is vicariously liable for Ray's negligence; and 3) Ray's negligence was the sole proximate cause of the accident and resulting injuries.

Defendants respond a jury question exists on these issues.[6]

Besides disputing Ray was negligent *per se*, defendants argue: 1) Wheeler and Rogge were negligent in failing to place reflective triangles behind Wheeler's truck; 2) Rogge was negligent for parking in front of Wheeler's truck; and 3) each plaintiff's negligence proximately caused the crash and the resulting injuries.

A party is entitled to summary judgment under Fed.R.Civ.P. 56 where the op-

posing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548.

Once the movant meets that initial burden, the "burden shifts to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex, supra*, 477 U.S. at 324, 106 S.Ct. 2548.

On summary judgment, I accept the non-movant's evidence as true and construe all evidence in its favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992).

### A. Ray's Negligence *Per Se*

■ To prevail on a negligence claim under Ohio law, plaintiffs must establish: 1) a legal duty; 2) breach of that duty; and 3) proximately caused harm. *E.g., Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989).

■ "Evidence of negligence may be prima facie or per se. When negligence is prima facie, the evidence of negligence is subject to rebuttal. When there is negligence per se, it is conclusive of that question." *Crosby v. Radenko*, 2011–Ohio–4662, ¶ 17, 2011 WL 4124367 (Ohio App.). "Application of negligence per se in a tort action means that the plaintiff has conclu-

---

6. However, as defendants have not disputed or responded to plaintiffs' vicarious-liability arguments, judgment shall be entered against

Estes, as well as Ray, for any damages for which the jury finds Ray liable.

sively established that the defendant breached the duty that he or she owed to the plaintiff." *Leizerman v. Kanous,* 181 Ohio App.3d 579, 583, 910 N.E.2d 26 (2009). However, the plaintiff still must prove proximate cause and damages. *Id.*

■ "Where a legislative enactment imposes a specific duty for the safety of others, failure to perform that duty is negligence per se." *Chambers v. St. Mary's Sch.,* 82 Ohio St.3d 563, 565, 697 N.E.2d 198 (1998).

### 1. Marked–Lanes Violation

■ Section 4511.33 of the Ohio Revised Code provides "a vehicle ... shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety." O.R.C. § 4511.33(A)(1).

■ A marked-lanes violation is negligence *per se. Orr v. Zeff,* 1980 WL 352761, *1 (Ohio App.).

Here, it is undisputed Ray failed to keep the Estes Express truck in the right-hand lane of traffic. Nevertheless, defendants contend a jury must decide if it was "practicable" for Ray to remain in the right lane. They suggest it was impractical to do so because "Ray was checking his mirrors to see if he could safely merge back into the left-hand lane." (Doc. 37 at 36).

■ "The phrase 'as nearly as practicable' does not give the driver the option to ignore lane boundaries; rather, the phrase requires the driver to remain within the lane markings *unless the driver cannot reasonably avoid straying." State v. Mays,* 119 Ohio St.3d 406, 410, 894 N.E.2d 1204 (2008) (emphasis added). "[T]he legislature," the court pointed out, "intended only special circumstances to be valid rea-

sons to leave a lane, not mere inattentiveness and carelessness." *Id.*

There is no evidence Ray had "valid reasons" to stray out of the right-hand lane and onto the shoulder. It is undisputed there were no cars or objects in Ray's lane of travel before the crash. Rather, accepting Ray's testimony as true, it appears: 1) he lost sight of the lane markings while checking his mirrors; and 2) when he turned his attention back to the road, he had already—and inexplicably—driven out of the right lane, negligently causing his trailer to veer onto the shoulder and strike Wheeler's truck.

■ Moreover, there is no support in Ohio law for the proposition a driver's need to check his mirrors excuses the driver from remaining within the proper lane of travel. Such a "self-created emergency, one arising from a driver's own conduct or from circumstances under his control, will not serve as an excuse." *Zehe v. Falkner,* 26 Ohio St.2d 258, 263, 271 N.E.2d 276 (1971).

I conclude no reasonable jury could find it was at all impractical for Ray to remain in own lane. Plaintiffs have therefore established Ray was negligent *per se.*

### 2. Assured–Clear–Distance Violation

■ Ohio law also requires a driver to maintain an assured clear distance between his vehicle and objects in his path of travel.

■ A driver violates the assured-clear-distance-ahead rule if the driver collides "with an object which (1) was ahead of him in his path of travel, (2) was stationary or moving in the same direction as the driver, (3) did not suddenly appear in the driver's path, and (4) was reasonably discernible." *Pond v. Leslein,* 72 Ohio St.3d 50, 52, 647 N.E.2d 477 (1995).

■ "Violation of the assured clear distance ahead statute constitutes negligence *per se.*" *Id.* at 53, 647 N.E.2d 477.

It is undisputed: 1) Wheeler's and Rogge's trucks were ahead of Ray; and 2) both trucks were stationary and did not appear suddenly in Ray's path of travel. However, defendants argue there is a factual dispute whether the lights on Wheeler's truck were "readily discernible."

Given Ray's own testimony, a reasonable jury would lack any basis for concluding the lights were not readily discernible.

Ray admitted seeing Wheeler's truck and its flashing lights either immediately before or concurrently with his merge into the right lane. He also testified he knew there was a large truck on the shoulder. Finally, his admission he "shouldn't have hit the truck off the road" (Doc. 32–1 at 11) virtually compels the inference Ray saw Wheeler's truck before colliding with it.

Even without plaintiffs' conspicuity expert's testimony, the undisputed evidence is that Ray saw Wheeler's truck on the shoulder—and thus the truck was "readily discernible"—well before the accident. Plaintiffs are entitled to summary judgment on the claim Ray was negligent *per se* for failing to maintain an assured clear distance.

### 3. Move–Over Violation

■ When a driver approaches a stationary "road service vehicle," the driver must: 1) "if possible ... change lanes into a lane that is not adjacent to that of the stationary ... road service vehicle"; or 2) if changing lanes is not possible, "proceed with due caution, reduce the speed of the motor vehicle, and maintain a safe speed for the road, weather, and traffic conditions." O.R.C. § 4511.213(A)(1), (2).

The evidence surrounding the alleged move-over violation is conflicting.

Ray testified he did not see Rogge's tow truck—the "road service vehicle" triggering his statutory obligation to move over—until immediately after the accident. Ray also testified that, after he saw Wheeler's truck, he tried merging into the left lane but determined he could not do so safely.

In contrast, eyewitness Christopher Sweatt, who by then was driving behind Ray, testified: 1) the lights from both Wheeler's and Rogge's trucks were clearly visible, and 2) Ray had time to merge into the left lane.

Plaintiffs' experts' testimony is consistent with Sweatt's description. Sobek, the conspicuity expert, opined the lights on Rogge's truck would have been visible to Ray at a distance of 5,000 feet from the accident site. Accident reconstructionist Crawford opined there were no vehicles in the left lane close enough to pose a hazard to Ray, in which case he could have changed lanes safely.

However, at this stage of the case I must accept Ray's evidence as true and draw all reasonable inferences his favor. *Eastman Kodak, supra,* 504 U.S. at 456, 112 S.Ct. 2072.

Doing so, I conclude a reasonable jury could find Ray did not see Rogge's lights until right after the crash. In that case, Ray would have had no duty, at least under the move-over law, to change lanes or reduce speed. Likewise, Ray's testimony he saw headlights in his mirrors would, if credited, establish it was unsafe to change lanes before the crash.

Accordingly, plaintiffs are not entitled to summary judgment on their claim Ray's mover-over violation constitutes negligence per se.

### B. Proximate Cause

Ray and Estes argue that, even if Ray had been negligent, plaintiffs' negligence

was also a proximate cause of the crash and their ensuing injuries.

They contend the crash was a foreseeable consequence of plaintiffs' failure to place reflective triangles, and Rogge's failure to park behind Wheeler's truck. This is the case, defendants contend, because reflective triangles would have given Ray an earlier, more specific warning there was a disabled vehicle on the shoulder. Defendants also assert Wheeler's and Rogge's trucks would have been easier to see had Rogge parked behind Wheeler.

Plaintiffs respond Ray's negligent driving was the sole proximate cause of the crash. Even assuming they were negligent, plaintiffs argue, there is no factual dispute Ray's marked-lanes and assured-clear-distance violations were intervening causes, severing the causal link between any negligence on their part and the collision.

■ "Proximate cause is an act or failure to act which, in a natural and continuous sequence, directly produces the injury and without which it would not have occurred." *Brott Mardis & Co. v. Camp*, 147 Ohio App.3d 71, 75, 768 N.E.2d 1191 (2001).

■ "The rule of proximate cause requires that the injury sustained shall be the natural and probable consequence of the negligence alleged; that is, such consequence as under the surrounding circumstances of the particular case might, and should have been foreseen or anticipated by the wrongdoer as likely to follow his negligent act." *Jeffers v. Olexo*, 43 Ohio St.3d 140, 143, 539 N.E.2d 614 (1989).

■ A party's negligence is a proximate cause of an injury if the injury is a natural and foreseeable result of the party's act or failure to act. *Brott Mardis, supra*, 147 Ohio App.3d at 76, 768 N.E.2d 1191.

■ There may be more than one proximate cause of an injury. *State Farm Mut. Auto. Ins. Co. v. VanHoessen*, 114 Ohio App.3d 108, 111, 682 N.E.2d 1048 (1996).

The defense does not deny Ray's negligence was at least one proximate cause of the crash.

No one disputes Ray drove out of the right-hand lane of traffic as he approached Wheeler's truck, crossed onto the shoulder, and side-swiped Wheeler's truck. Indeed, Ray: 1) admitted "he went off the road and hit the truck"; and 2) acknowledged he "shouldn't have hit the truck off the road." (Doc. 32–1 at 9). The evidence is also undisputed there were no obstructions in Ray's path of travel immediately before the accident.

Because the side-swipe collision and the ensuing injuries were entirely foreseeable results of Ray's negligent driving, plaintiffs have established Ray's negligence was, as a matter of law, a proximate cause of the accident.

■ I also conclude that, even if plaintiffs breached a duty of care, a reasonable jury could only find Ray's negligent driving was an intervening cause—and thus the sole proximate of the crash.

■ The test for intervening causation is "whether the original and successive acts may be joined together as a whole, linking each of the actors as to the liability, or whether there is a new and independent act or cause which intervenes and thereby absolves the original negligent actor." *Cascone v. Herb Kay Co.*, 6 Ohio St.3d 155, 160, 451 N.E.2d 815 (1983).

In this context, " 'new' means that the second act [of negligence] could not have reasonably been foreseen." *Johnson v. Pohlman*, 162 Ohio App.3d 240, 250, 833

N.E.2d 313 (2005). " 'Independent' means the absence of any connection or relationship of a cause and effect between the original and subsequent acts of negligence." *Id.*

A jury could not rationally find the collision between Ray's and Wheeler's trucks was a foreseeable result of the lack of triangles or the location of Rogge's truck.

 First, such finding would run counter to Ohio law, which holds drivers stopped on the shoulder "need not anticipate that another driver will violate the law and that a collision will occur." *McDougall v. Smith*, 191 Ohio App.3d 101, 104, 944 N.E.2d 1218 (2010); *see Andrews v. Davis*, 140 Ohio App.3d 707, 711, 748 N.E.2d 1195 (2000) (even if truck driver was "arguably negligent" for parking truck on highway shoulder, second driver's action in giving plaintiff "brake job," which caused plaintiff's car to swerve and crash into truck, was "new and independent event" absolving truck driver of liability); *Estate of Mathewson v. Decker*, 2006 WL 1519687, *4 (Ohio App.) (oncoming motorist's collision with truck parked on shoulder was unforeseeable result of decision to park truck on shoulder).

Under these authorities, Ray's negligent act of driving onto the shoulder and colliding into Wheeler's truck was unforeseeable as a matter of law.[7]

Second, the evidence also precludes a finding plaintiffs' alleged negligence proximately caused the crash.

Ray's testimony establishes he knew, well before the crash, there was a large truck on the shoulder. He admitted seeing Wheeler's truck, with its hazard lights flashing, either immediately before or concurrently with his merge from the left to the right lane. Ray also discerned it was a "big truck," sitting on the shoulder and outside his lane of travel. (Doc. 32–1 at 10, 16). Finally, Ray did not testify there were any objects ahead of him in the right-hand lane.

This testimony is consistent with eyewitness Sweat's testimony that: 1) he saw flashing lights from at least one truck on the shoulder; and 2) Ray continued driving in the right-hand lane for fifteen to twenty seconds before the crash.

Given this evidence, no reasonable jury could determine it was foreseeable that a driver who knew there was a truck on the shoulder would crash into that truck because there were no reflective triangles in sight. To the contrary, a rational jury could only find that kind of negligent driving was a "new"—and unforeseeable—act. *Johnson, supra*, 162 Ohio App.3d at 250, 833 N.E.2d 313.

Furthermore, a reasonable jury would have no basis for finding Rogge's failure to park behind Wheeler—which may have made the trucks more visible—foreseeably caused the crash. This is because Ray already knew there was a truck on the shoulder, and Ray could have avoided the accident entirely by exercising ordinary care.

Third, because the evidence does not show any cause-and-effect relationship between plaintiffs' negligence and the crash,

---

7. Defendants' reliance on *Bishop v. R.A. Wagner Trucking Co., Inc.*, 2014 WL 636987 (N.D.Ala.), is unavailing. There the district court, applying Alabama law, held a jury should decide whether a truck driver's failure to display reflective triangles was a proximate cause of an accident occurring on the shoulder. *Id.*, at *7–8. However, Alabama law in this area appears inconsistent with Ohio law, which holds another driver's negligent collision with a vehicle parked on the shoulder is unforeseeable. In any event, *Bishop* is distinguishable on its facts, as it was undisputed in that case the truck driver neither displayed triangles nor activated his hazard lights.

any reasonable jury would find Ray's negligence was an "independent" act.

To be sure, the defense experts have established reflective triangles serve a two-fold purpose: alerting drivers there is a disabled commercial vehicle on the shoulder, and doing so as early as possible. This evidence would permit a jury to find the absence of triangles contributed to Ray's initial decision to continue his merge to the right-hand lane (rather than remain in the left-hand lane).

However, the evidence does not permit a rational finding that Ray's subsequent failure to remain in his lane and maintain an assured clear distance was the natural effect of the missing reflective triangles or the diminished visibility of Rogge's emergency lights.

Once again, Ray's own testimony establishes he had advance warning of a disabled vehicle on the shoulder and could have, through the exercise of ordinary care, avoided the collision with Rogge's truck. But for unknown (or, at least, unexplained) reasons, Ray drove off the road and struck Rogge's truck.[8]

At best, plaintiffs' alleged negligence may have furnished a condition that made the accident possible: by not using reflective triangles and failing to park behind Wheeler's truck, Wheeler and Rogge may have contributed to Ray's initial decision to merge into the right-hand lane.

 But when "the negligence complained of merely furnishes a condition by which the injury was made possible and a subsequent act caused the injury, the existence of such condition is not the proximate cause of the injury." *Anderson v. Augenstein*, 1988 WL 116328, *3 (Ohio App.).[9]

In this case, a rational jury could only find that subsequent act was Ray's unforeseeable failure to remain within his lane of travel. Ray's negligence was thus an "independent" act with no causal relationship to plaintiffs' alleged negligence. *Johnson, supra*, 162 Ohio App.3d at 250, 833 N.E.2d 313.

 Finally, I note defendants have failed to establish Rogge owed Ray a duty not to park his tow truck in front of Wheeler's truck.

8. *See Dmitruk v. George and Sons' Repair Shop, Inc.*, 217 Fed.Appx. 765 (10th Cir.2007) (truck drivers' failure to lay out reflective triangles was not proximate cause of crash, where trucks were parked off traveled portion of roadway, each truck activated hazard lights, and visibility was good); *Reinicke v. Aeroground, Inc.*, 167 S.W.3d 385, 389 (Tex. App.2005) (granting summary judgment to defendant truck driver, who had parked on shoulder without displaying triangles, on proximate-cause grounds because "there is no evidence that the mere presence of the [truck] on the shoulder or the absence of warning triangles could have itself reasonably compelled a driver who was maintaining a safe distance, speed, lookout, and the like to leave the roadway").

9. Because plaintiffs' failure to display triangles was, at best, a remote cause of the crash, Ray's testimony he would not have merged right had he seen triangles is insufficient to avoid summary judgment. Moreover, Ray's testimony is inadmissible speculation that would not help the jury determine a fact in issue. *See* Fed.R.Evid. 701(a). Federal law is clear that "[s]peculative testimony as to what a witness would have done under different circumstances cannot possibly be based on the witness's perception." *Athridge v. Aetna Cas. & Sur. Co.*, 474 F.Supp.2d 102, 105 (D.D.C.2007); *see AVM Techs., LLC v. Intel Corp.*, 927 F.Supp.2d 139, 146 (D.Del.2013) ("a lay witness may not offer testimony as to events that 'would have occurred.'"); *Brim v. Midland Credit Mgmt., Inc.*, 795 F.Supp.2d 1255, 1268 (N.D.Ala.2011) ("A witness's opinion about an event that did not occur is mere speculation."). Because Ray's proposed testimony is not based on his own perceptions, it is inadmissible under Rule 701(a).

■ "The threshold question of the existence of a duty is a question of law" for the court to decide. *Barnett v. Beazer Homes Inves., L.L.C.*, 180 Ohio App.3d 272, 278, 905 N.E.2d 226 (2008).

Defendants rely entirely on Rogge's supposed contractual obligation to park his truck behind the disabled vehicles he services. However, even assuming such a contractual obligation existed, it is undisputed Rogge did not owe that duty to Ray or Estes, neither of whom was party or privy to the contract. *Vistein v. Keeney*, 71 Ohio App.3d 92, 106, 593 N.E.2d 52 (1990) ("if a plaintiff brings an action sounding in tort and bases his claim upon a theory of duty owed by a defendant as a result of contractual relations, he must be a party or privy to the contract in order to prevail.").

Because defendants have not shown Rogge owed Ray a duty to park his tow truck in a particular location, they cannot prevail on their claim Rogge's alleged negligence was a proximate cause of the crash or his injuries.

The nub of this case is that, by his own admission, Ray saw the Wheeler truck off to the side and on the shoulder. That there might have been more to see if Rogge's truck had been behind, not in front of the Wheeler truck, or had Rogge set out triangles, does not matter. There is no reason to believe, and no evidence in any event to support any such belief that anything more would have cause Ray to be less inattentive and remain in his proper lane of travel.

At bottom, there is no genuine dispute of material fact Ray's negligence was an intervening cause—and thus the sole prox-

imate cause of the crash.[10] Accordingly, plaintiffs are entitled to judgment as a matter of law on this question.

### Conclusion

In sum, plaintiffs are entitled to summary judgment on their claims: 1) Ray was negligent per se for violating Ohio's marked-lanes and assured-clear-distance-ahead laws; 2) Ray's negligence was the sole proximate cause of the crash and plaintiffs' injuries; and 3) Estes is vicariously liable for Ray's negligence.

However, summary judgment is not warranted on plaintiffs' claim Ray was negligent per se for violating Ohio's move-over law.

It is, therefore,

ORDERED THAT plaintiffs' motion for partial summary judgment (Doc. 32 in case no. 3:13CV1227 and Doc. 68 in case no. 3:13CV1174) be, and the same hereby is, granted in part and denied in part.

So ordered.

---

10. Nor could a jury find that Rogge's parking his truck where he did was, in part, a proximate cause of his injuries and their severity. This is so (contrary to a tentative view I expressed during a pretrial conference with counsel) because, if Ohio law does not make it foreseeable that someone will run off the roadway, so that the accident is foreseeable, *McDougall, supra*, the same doctrine precludes a finding of proximate cause on a plaintiff's part where such accident has, as in this case, occurred.