OPINION
This is an accelerated appeal taken from a final judgment of the Trumbull County Court of Common Pleas. Appellant, Helen Albert, formerly doing business as Albert's Family Care Center, appeals from the decision of the trial court to grant a defense motion for summary judgment in an action for racial and sexual discrimination.
Appellant, an African-American woman, was the founder and operator of Albert's Family Care Center ("Care Center"). The Care Center was a five-bed residential facility that housed developmentally handicapped individuals in Trumbull County, Ohio. The facility was duly licensed as a service provider by the Ohio Department of Mental Retardation and Developmental Disabilities ("Department of Mental Retardation").
In the early 1990's, appellant was finding residents to fill the five beds in the Care Center through a financing method known as "purchase of service." Under this financing plan, the state provided funds directly to the service provider pursuant to the terms of a written contract. The funding consisted entirely of state money that was paid directly to the facility.
By 1992, the State of Ohio began to phase out purchase of service funding for facilities, such as the Care Center, which housed the mentally retarded and developmentally disabled. In its place, the state began to implement a new funding philosophy called "supported living." Funding for supported living also came entirely from the state. Under this plan, however, the goal was to focus on the individual needs of the disabled person. To this end, supported living funds followed the resident, thereby allowing such resident more autonomy in selecting the facility where he or she wished to live. This was in contrast to purchase of service funding, wherein money was paid directly to a given facility.
In order to convert from purchase of service to supported living funding, a service provider was required to complete and return an application to the Department of Mental Retardation. Following the filing of an application with the state by the service provider, the applicable county board of mental retardation and developmental disabilities simply forwarded a recommendation to the Department of Mental Retardation with respect to the application for supported living funding. The decision as to whether to approve or deny such an application was made at the state level, not the county level. If the application was ultimately approved, the service provider then had to wait for certification from the Department of Mental Retardation which verified the facility's eligibility to house residents who were receiving funds through the supported living program.
At the same time the state was converting from purchase of service to supported living funding, appellant began to experience financial problems at the Care Center. Specifically, she lost several residents, thereby leaving the Care Center with a corresponding number of empty beds that were not producing any income.
Beginning in approximately February 1992, appellant contacted the Trumbull County Board of Mental Retardation and Developmental Disabilities ("the Trumbull County Board") for assistance in alleviating the financial difficulties that she was encountering at the Care Center. At the time, Douglas Reynolds ("Reynolds") was the Superintendent of the Trumbull County Board, while Robert Melcher ("Melcher") was the Director of Planning and Residential Services.[1]
The Trumbull County Board informed appellant about the application and certification process that was required in order for the Care Center to enroll residents who were receiving supported living monies. Beyond this, on several occasions, the Trumbull County Board provided appellant with the necessary application to convert the Care Center's funding source from purchase of service to supported living. Despite the efforts of the Trumbull County Board and its directors, the Department of Mental Retardation never received an application from appellant requesting the certification of the Care Center under the supported living funding plan.
On March 10, 1994, appellant closed the Care Center due to a lack of funding. With the closing of the facility, the Trumbull County Board was faced with the emergency placement of the four individuals who resided in the Care Center at that time. The Department of Mental Retardation immediately authorized the Trumbull County Board to select an alternative service provider which could take in the four residents. The Trumbull County Board chose a provider called Independence, Inc. to care for the individuals. In contrast to the Care Center, Independence had previously been certified to provide residential services to mentally retarded and developmentally disabled individuals who were receiving supported living funding.
On January 22, 1996, appellant filed an R.C. Chapter 4112 discrimination action against the Trumbull County Board, Douglas, and Melcher in which she alleged that they discriminated against her on the basis of her race and sex. Appellant sought monetary damages from appellees for their alleged violation of R.C.4112.02(B)(1), to wit: the refusal or failure to assist appellant in securing employment opportunities at the Care Center.
Appellees filed a joint answer on March 18, 1996. In their answer, appellees denied the substance of appellant's allegations of race and sex discrimination and set forth various affirmative defenses to the claim contained in the complaint.
Following the pleadings, the parties engaged in discovery. During the discovery process, a number of potential witnesses were deposed. They included: appellant, Douglas, Michael D. French, an official with the Department of Mental Retardation; Michalene Hughley-Hameed, an employee of the Trumbull County Board; and Willa M. Stevens, the bookkeeper for the Care Center.
On January 15, 1998, appellees filed a motion for summary judgment pursuant to Civ.R. 56. In terms of evidentiary materials, they relied on the pleadings, answers to interrogatories, and depositions which were filed with the trial court. As grounds for the motion, appellees asserted that they were entitled to summary judgment on three grounds: (1) appellant failed to file her discrimination action within the applicable statute of limitations; (2) appellees were immune from liability pursuant to R.C. Chapter 2744; and (3) appellant failed to establish a prima facie case of racial or sexual discrimination based on the criteria set forth by the United States Supreme Court in McDonnell Douglas Corp. v. Green (1973), 411 U.S. 792.
Appellant responded by filing a brief in opposition to the motion for summary judgment. The trial court entertained arguments on the motion at a hearing on February 27, 1998. Thereafter, the trial court allowed each side to file a supplemental brief in support of its respective position.
On May 12, 1998, the trial court granted appellees' motion for summary judgment. Although the entry ruled favorably on the motion, it did not state the specific ground or grounds upon which the trial court relied when deciding that appellees were entitled to judgment as a matter of law.
From this decision, appellant filed a timely notice of appeal with this court. She now asserts the following assignment of error:
 "The trial court erred in granting defendants-appellees' motion for summary judgment."
 Civ.R. 56(C) sets forth the standard for addressing a motion for summary judgment. In order to prevail, the moving party must establish that: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmovant. Civ.R. 56(C); Leibreich v. A.J. Refrigeration, Inc. (1993), 67 Ohio St.3d 266, 268; Davis v. Loopco Industries, Inc. (1993), 66 Ohio St.3d 64, 65-66; Lindquist v. Dairy Mart/Convenience Stores of Ohio, Inc. (Nov. 14, 1997), Ashtabula App. No. 97-A-0015, unreported, at 6, 1997 Ohio App. LEXIS 5124. An appellate court applies a de novo standard of review when determining whether a trial court p roperly granted summary judgment. McCallister v. Portsmouth (1996), 109 Ohio App.3d 807, 810; Burkholder v. Straughn (June 26, 1998), Trumbull App. No. 97-T-0146, unreported, at 2, 1998 WL 553623.
We turn now to the case sub judice. As stated previously, appellees put forth three grounds in their motion for summary judgment, but the trial court did not expressly indicate upon what basis it predicated its decision.
In requesting that summary judgment be granted on their behalf, appellees first claimed that appellant did not file her complaint within the applicable statute of limitations. On appeal, appellees have dropped this argument in support of the trial court's decision.
In her complaint, appellant alleged that she had been subjected to unlawful discriminatory practices during the period from February 1992 through February 1994. She filed the civil action against appellees on January 22, 1996.
In Cosgrove v. Williamsburg of Cincinnati Mgt. Co., Inc. (1994), 70 Ohio St.3d 281, syllabus, the Supreme Court of Ohio held that " R.C. 4112.99 is a remedial statute, and is thus subject to R.C. 2305.07's six-year statute of limitations." At the time, R.C. 4112.99 read in full: "Whoever violates this chapter is subject to a civil action for damages, injunctive relief, or any other appropriate relief." Since appellant brought her civil action against appellees for damages on January 22, 1996, it was certainly within the six-year statute of limitations that existed at the time.[2]
The second ground offered by appellees in their motion for summary judgment was that they were immune from liability pursuant to R.C. Chapter 2744. R.C. 2744.02(A)(1) provides blanket immunity to a political subdivision for any damage to persons or property allegedly caused by any act or omission of the subdivision or its employee in connection with a governmental or proprietary function. In this case, it was uncontroverted that the Trumbull County Board is a "political subdivision" as that term is defined in R.C. 2744.01(F).
As a general matter, the sovereign immunity of the political subdivision extends to its employees. See R.C. 2744.03(A)(6). Again, it was undisputed that Douglas and Melcher were "employees" of the Trumbull County Board as R.C. 2744.01(B) defines that term for purposes of immunity.
R.C. 2744.02(B) sets forth five exceptions to the general grant of immunity accorded to political subdivisions. Of these, R.C.2744.02(B)(1) through (4) were clearly inapposite as applied to the case at bar. Appellant, however, claims that R.C.2744.02(B)(5) was applicable. It provides:
 "(5) In addition to the circumstances described in divisions (B)(1) to (4) of this section, a political subdivision is liable for injury, death, or loss to person or property when liability is expressly imposed upon the political subdivision by a section of the Revised Code * * *." (Emphasis added.)
 There are also exceptions to the basic immunity conferred on employees of a political subdivision. R.C. 2744.03(A)(6) provides:
 "(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:
 "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
 "(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
 "(c) Liability is expressly imposed upon the employee by a section of the Revised Code. * * *" (Emphasis added.)
 In the instant matter, appellant contends that R.C. 2744.02(B)(5) operated to negate the immunity of the Trumbull County Board, while R.C. 2744.03(A)(6) functioned in a similar fashion to negate the immunity of Douglas and Melcher. According to appellant, liability "is expressly imposed upon" the Trumbull County Board and its employees by R.C. Chapter 4112.
As noted previously, appellant sought monetary damages from appellees for their alleged violation of R.C. 4112.02(B)(1). This statute reads:
"It shall be an unlawful discriminatory practice:
"* * *
 "(B) For an employment agency or personnel placement service, because of race, color, religion, sex, national origin, handicap, age, or ancestry, to do any of the following:
 "(1) Refuse or fail to accept, register, classify properly, or refer for employment, or otherwise discriminate against any person[.]"
 The term "employment agency" is defined to include "any person regularly undertaking, with or without compensation, to procure opportunities to work or to procure, recruit, refer, or place employees." R.C. 4112.01(A)(5). In turn, the word "person" includes "the state and all political subdivisions, authorities, agencies, boards, and commissions of the state." R.C. 4112.01(A)(1).
From appellant's perspective, R.C. 2744.02(B)(5) and2744.03(A)(6) negated the immunity of appellees because R.C.4112.02(B)(1) expressly imposed liability on them given the definitions contained in R.C. 4112.01. Specifically, the Trumbull County Board and its employees constituted "persons" under R.C.4112.01(A)(1) who, in turn, could function as an "employment agency" under R.C. 4112.01(A)(5). Therefore, according to appellant, she could maintain a civil action against them for an alleged violation of R.C. 4112.02(B)(1) based on unlawful discriminatory practices in the procurement of employment opportunities.
As a general matter, this court agrees with appellant that a political subdivision and its employees may be liable for discriminatory practices pursuant to various provisions within R.C. Chapter 4112. The definition of a "person" for purposes of R.C. Chapter 4112 includes the state and its political subdivisions, including boards. As such, the Trumbull County Board and its employees could be held liable in a civil action for certain types of discriminatory practices.
The flaw in appellant's position is her attempt to classify the Trumbull County Board as an "employment agency" for purposes of bringing suit under R.C. 4112.02(B)(1). As indicated previously, an employment agency includes any person, including the state and its political subdivisions, "regularly undertaking, with or without compensation, to procure opportunities to work or to procure, recruit, refer, or place employees." R.C. 4112.02(A)(5). The Trumbull County Board simply does not fall within the ambit of this definition.
Appellant attempts to argue that the Trumbull County Board does indeed undertake to procure work opportunities on a regular basis for residential service providers, such as herself and the Care Center that she operated. The crux of appellant's position is that a primary function of the Trumbull County Board is to refer work opportunities to certified residential service providers by directing mentally retarded and developmentally disabled individuals into housing that is operated by such providers. Therefore, according to appellant, the Trumbull County Board is an employment agency.
This appears to be a case of first impression in Ohio. We are not surprised to find that there is no other case addressing whether a given entity, governmental or otherwise, constitutes an "employment agency" as that term is defined by R.C. 4112.02(B)(1).
Upon our own review, this court determines that appellant's interpretation of what constitutes an employment agency is overly broad. Therefore, we hold that the Trumbull County Board is not such an agency.
A county board of mental retardation and developmental disabilities does not exist to procure employment opportunities for residential service providers. Rather, the primary basis for its existence is to serve the needs of the mentally retarded and developmentally disabled residents of a given county. See R.C.5126.04(A) (a county board of mental retardation and developmental disabilities "shall plan and set priorities based on available resources for the provision of facilities, programs, and other services to meet the needs of county residents[.]"); R.C. 5126.05
(defining the powers and duties of a county board of mental retardation and developmental disabilities).
To that end, the county board of mental retardation and developmental disabilities may guide residential service providers through the certification process so that such providers receive funding. In addition, the county board may refer disabled individuals to a given facility. The goal, however, is not to guarantee that the facility's bed space is filled to capacity, but rather to coordinate residential services within the county to ensure that the needs of the disabled community are being met. See Ohio Adm. Code 5123:2-16-01 (providing rules governing a county board of mental retardation and developmental disabilities in the development of residential services). In this capacity, the county board functions as a conduit for state funding for mentally retarded and developmentally disabled county residents.
Because the Trumbull County Board is not an employment agency, appellant improperly brought a cause of action against the board and its employees based on an alleged violation of R.C.4112.02(B)(1). For this reason alone, appellees were entitled to summary judgment.
Given this, we need not even assess whether appellant established a prima facie case of racial or sexual discrimination based on the criteria set forth by the United States Supreme Court in McDonnell Douglas. Thus, the existence of contested evidence as to whether appellant ever completed and returned the required application to convert the Care Center's funding from purchase of service to supported living is irrelevant and immaterial.
Upon review, it is apparent that appellees were entitled to judgment as a matter of law because appellant could not bring a civil action against them based on an alleged violation of R.C.4112.02(B)(1). The trial court properly granted the motion for summary judgment.
Based on the foregoing analysis, the assignment of error is not well-taken. Accordingly, the judgment of the trial court is affirmed.
 _____________________ PRESIDING JUDGE
 _____________________ JUDITH A. CHRISTLEY
O'NEILL, J., CACIOPPO, J., Ret., Ninth Appellate District, sitting by assignment, concur.
[1] Collectively, the Trumbull County Board, Douglas, and Melcher will be referred to as "appellees."
[2] R.C. 4112.99 was amended effective January 27, 1997. It now reads in part:
 "Whoever violates this chapter is subject to a civil action for damages, injunctive relief, or any other appropriate relief. A civil action commenced pursuant to this section shall be brought within two years after the alleged unlawful discriminatory practice occurred. The period of limitation specified in this section for purposes of a civil action authorized by this section does not affect any other period of limitation that is specified in another section of this chapter for purposes of a distinct civil action authorized by that other section * * *." (Emphasis added.)