DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-Appellant Flagstar Bank ("Flagstar") appeals the order of the Jackson County Court of Common Pleas which granted partial summary judgment in favor of Plaintiff-Appellee Lanco Title Agency, Inc. ("Lanco"). The trial court found that Flagstar has no interest in or lien on the real estate owned by Defendants-Appellees Terry and Susan Taylor (the Taylors). Thus, the trial court's judgment cancelled and released the mortgage from the Taylors to Defendant Mortgage Plus, Inc. (Mortgage Plus).
 {¶ 2} Flagstar argues, inter alia, that it gave consideration to the Taylors for the mortgage when it deposited the mortgage funds into Mortgage Plus's checking account. Flagstar also contends that Lanco violated R.C. 1349.21 by disbursing money from its escrow account before the mortgage funds transferred to Lanco through a check issued by Mortgage Plus were available for withdrawal and disbursement. As a result, Flagstar submits that Lanco cannot be granted equitable relief.
 {¶ 3} We find that no genuine issue of material facts exists and that Lanco is entitled to judgment as a matter of law. Accordingly, we affirm the judgment of the trial court.
 Facts and Proceedings Below {¶ 4} The Taylors own a residence located on a parcel of land situated on Webb Pierce Road in Jackson, Ohio. In November 1999, the Taylors decided to consolidate their debts which included an existing mortgage as well as the balances on several unsecured credit cards. In doing so, the Taylors applied for a mortgage loan from Mortgage Plus, an internet-based mortgage broker, in order to refinance their existing mortgage and pay off the credit card debt. Mortgage Plus accepted the Taylors' application and issued a mortgage loan commitment to them for approximately $108,298.58.
 {¶ 5} Mortgage Plus had an existing relationship with Flagstar whereby Flagstar financed the mortgages issued by Mortgage Plus. This relationship was governed by the terms and conditions set forth in the Mortgage Warehousing and Security Agreement. Joseph R. Lathrop, Flagstar's vice president, served as chief lending officer to the Mortgage Plus account. According to him, Flagstar would lend money to Mortgage Plus on a revolving line of credit. Flagstar would transfer funds from the line of credit into Mortgage Plus's checking account with Flagstar. Mortgage Plus would use the line of credit to make residential mortgage loans. In any one loan transaction, Flagstar would lend 98 — 99 percent of the total mortgage to Mortgage Plus and Mortgage Plus would cover the remaining 1 — 2%. Mortgage Plus would then sell the loans to third party investors or, in many cases, back to Flagstar. The proceeds from the sale of the loans would then go to Flagstar in order to pay down Mortgage Plus's line of credit. According to Lathrop, Mortgage Plus's line of credit had a maximum permitted balance of $6,000,000.
 {¶ 6} However, also according to Lathrop, Flagstar had decided not to renew Mortgage Plus's warehouse line of credit which expired on October 31, 1999. Apparently, Mortgage Plus was not covering their 1 — 2% portion on each mortgage, causing Mortgage Plus's borrowing base to be a risk for Flagstar. Flagstar did, nevertheless, agree to continue to loan funds to Mortgage Plus for up to 60 days after the expiration of the warehouse line of credit to allow Mortgage Plus sufficient time to find alternative sources to finance their mortgages. Accordingly, Flagstar agreed to advance to Mortgage Plus the necessary funds for the Taylors' mortgage during this "wind down" period.
 {¶ 7} Lathrop explained that Flagstar's normal practice, in a residential loan transaction, is to wire the funds directly to the title company that is conducting the closing. However, in a case such as the Taylors', where there is an arrangement made between the title company and the mortgage broker for the title company to accept a check, Flagstar adheres to the mortgage broker's instructions. In the Taylors' situation, after receiving the advance from Flagstar, Mortgage Plus would deliver a check for the loan proceeds to the title company, which would in turn disburse the funds and conduct the closing. Thus, Flagstar wire-transferred $103,063 into Mortgage Plus's checking account on January 6, 2000, for the purpose of funding the Taylors' loan.
 {¶ 8} Mortgage Plus arranged for Lanco to perform a title search on the Taylors' property as well as to conduct the loan closing. On December 28, 1999, Lanco received a closing package for the Taylors' loan from Mortgage Plus. The package contained closing instructions, loan documents, and a check (Mortgage Plus check) in the amount of $108,298.58 drawn on Mortgage Plus's checking account at Flagstar, payable to Lanco. Per Mortgage Plus's instructions, Lanco conducted the loan closing with the Taylors on December 29, 1999. At closing, the Taylors signed the loan documents prepared by Mortgage Plus which included a promissory note, a mortgage deed, and a closing statement. As instructed by Mortgage Plus, Lanco placed the signed loan documents in escrow, to be broken on January 4, 2000, following the statutory three day rescission period and a final title search.
 {¶ 9} On January 4, 2000, Lanco conducted a final title search on the property, found it to be in accordance with its commitment, and submitted the mortgage from the Taylors to Mortgage Plus for recording. Also, pursuant to Mortgage Plus's instructions, Lanco deposited the Mortgage Plus check into its escrow account and wrote eleven checks out of its escrow account for the benefit of the Taylors. The eleven checks written by Lanco paid, among other things, the original mortgage on the property with Oak Hills Bank, unsecured credit card debt with JC Penny, fees, and $6493.22 to Mortgage Plus. Lanco recorded Mortgage Plus's mortgage in the Jackson County Mortgage Records on January 7, 2000.
 {¶ 10} Also on January 4, 2000, Lanco mailed the eleven checks to their respective payees and delivered the signed loan documents to Mortgage Plus. All of the checks issued by Lanco were received by their respective payees and deposited. Except for one check issued to the Taylors for $2.42, the remaining Lanco checks were paid out of Lanco's own funds in its escrow account prior to January 14, 2000. Three of the checks issued by Lanco were used to pay off the balance of three mortgage loans recorded against the Taylors' property: (1)a mortgage to Oak Hills Bank in the amount of $55,338.66; (2) a mortgage to Oak Hills Bank $27,267.20; and (3) a mortgage to City Loan Financial Services in the amount of $16,120.59.
 {¶ 11} As stated above, as of January 4, 2000, Flagstar had not advanced the funds to Mortgage Plus for the Taylors' loan. However, according to Lathrop, Flagstar had approved the Mortgage Plus application for funding of the Taylors' loan and was aware that Mortgage Plus issued a check to Lanco for deposit on January 4, 2000. Moreover, Mortgage Plus's advance on the line of credit had been stamped "cleared to close" by Flagstar. However, the funds for the Taylors' loan were not advanced to Mortgage Plus until January 6, 2000. Several of Flagstar's internal communications reveal that Mark Hammond, president of Flagstar, instructed that the Taylors' loan was to be funded, but that when the check written on Mortgage Plus's account was presented to Flagstar for payment, it was to be rejected due to insufficient funds. According to Lathrop, Flagstar knew that it could cure the deficiency in Mortgage Plus's borrowing base if it funded the Taylors' loan, by advancing the money to Mortgage Plus, but then rejected the Mortgage Plus check issued to Lanco when presented for payment.
 {¶ 12} In fact, this is exactly what Flagstar did. When Lanco's bank presented the Mortgage Plus check to Flagstar for payment on January 7, 2000, Flagstar rejected it for insufficient funds. Flagstar did this even through Mortgage Plus's checking account statement showed a closing balance on January 7, 2000, of $358,370.76. Thus, even though the Taylors' loan funds had been advanced to Mortgage Plus by a deposit made into its account on January 6, 2000, Flagstar did not permit those funds to be paid out. Instead, Flagstar dishonored the check when it was presented for payment.
 {¶ 13} On January 14, 2000, Troyla Berry, owner and principal officer of Lanco, received notice from its bank that payment of the Mortgage Plus check had been refused by Flagstar. Berry immediately contacted David Barton, President of Mortgage Plus, and demanded that the check be made good. Barton advised Berry that the check would be made good in the near future. After several weeks, Lanco learned that the Taylors' loan documents had been transferred to Flagstar. Lanco contacted Flagstar several times and requested that the loan documents be returned to Lanco. However, Flagstar refused to return those documents to Lanco.
 {¶ 14} According to Berry, all of the checks dispersed on behalf of the Taylors were honored and paid from Lanco's escrow account. Nonetheless, because the Mortgage Plus check was dishonored, several other checks written on Lanco's account bounced. In order to cover those checks and cure the deficit in her account, Berry and Lanco obtained loans to cover the $108,296.16 deficiency.
 {¶ 15} On May 11, 2000, Lanco filed a complaint against Mortgage Plus, Homestead USA, Inc. (Homestead), Flagstar, president of Mortgage Plus David Barton, vice-president of Mortgage Plus Randy Dowding, and the Taylors. In its complaint, Lanco requested an order declaring that Mortgage Plus, Flagstar and Homestead have no enforceable lien against the Taylors' real property and that Lanco has an equitable lien on the property due to payment of the Taylors' debts from its escrow account. Specifically, Lanco alleged that Mortgage Plus was liable on the check it had drawn but was dishonored, that Barton and Dowding in their capacity as officers of Mortgage Plus committed fraud when it knew the check to Lanco would be dishonored for insufficient funds, that Barton and Dowding were liable for breach of their fiduciary duty, that the corporate form of Mortgage Plus should be disregarded to hold Barton and Dowding individually liable, that Flagstar was liable for conversion of the mortgage funds, and that Flagstar was liable for tortuous interference.
 {¶ 16} On July 10, 2000, pursuant to Civ.R. 55(A), the trial court entered default judgment in favor of Lanco against defendant Mortgage Plus, David Barton and Randy Dowding. On July 19, 2000, Lanco dismissed its claim against Homestead. In August, 2000, the trial court ordered that the Taylors deposit with the clerk of courts the accrued mortgage payments of $2,507.61. The trial court instructed the clerk of courts to place that money into an interest bearing escrow account, into which the Taylors would continue to deposit their monthly payments under the mortgage.
 {¶ 17} On November 8, 2000, Lanco moved for partial summary judgment as to count one of its complaint. Lanco asked the trial court to declare two things: (1) that Lanco possesses a first and best equitable lien upon the Taylors' property, and (2) that the mortgage deed that was recorded in favor of Mortgage Plus was void and unenforceable. Prior to the trial court's summary judgment ruling, Lanco and the Taylors reached a settlement. Under the settlement, the Taylors agreed that Lanco was entitled to an equitable first lien upon their property, and they agreed that, if the court would rule that Mortgage Plus's mortgage should be cancelled, the Taylors would obtain a new mortgage loan in order to pay to Lanco a compromised amount in satisfaction of its equitable lien. This settlement resolved all issues between Lanco and the Taylors.
 {¶ 18} On February 21, 2001, Flagstar filed a cross-motion for summary judgment on Lanco's allegation of tortuous interference. Flagstar's cross-motion for summary judgment was granted on February 21, 2003.
 {¶ 19} On May 31, 2001, the trial court granted partial summary judgment in favor of Lanco. Specifically, the trial court found that Mortgage Plus issued a check to Lanco for the closing of the Taylors' mortgage and that, at the time the check was issued and presented for payment, sufficient funds were available in the Mortgage Plus checking account; that even though the requisite funds were available, Flagstar refused to honor the check; that although Flagstar provided the funds specifically for the Taylors' closing, Flagstar refused to permit those funds to be paid out; and that Flagstar has no interest or lien in the proceeds paid by Lanco on behalf of the Taylors. Thus, the trial court found no genuine issue of material fact and that Lanco was entitled to a judgment canceling and releasing the mortgage from the Taylors to Mortgage Plus. Finally, the court ruled that Flagstar has no interest or lien upon the real estate owned by the Taylors.
 {¶ 20} Subsequent to the trial court's grant of partial summary judgment, the Taylors filed a motion on July 29, 2002, requesting the trial court to release the mortgage payments they deposited into escrow held by the clerk of courts. On August 6, 2002, the trial court granted the Taylors' motion and ordered the clerk to release the escrow funds to the Taylors.
 The Appeal {¶ 21} Flagstar timely filed an appeal and assigned the following errors for our review.
 {¶ 22} First Assignment of Error: "The trial court erred in granting Lanco's Motion for Partial Summary Judgment and canceling and releasing the mortgage executed by the Taylors at the closing."
 {¶ 23} Second Assignment of Error: "The trial court erred in granting the Taylors' motion for release of escrow funds."
 {¶ 24} Flagstar presents several arguments in support of its assignment of errors. First, Flagstar asserts that the trial court erred in granting Lanco summary judgment because the Taylors did, in fact, receive consideration for the mortgage. Flagstar argues that the Taylors' debts were paid off and that it does not matter from whom consideration flowed for the mortgage to be valid and enforceable. Second, Flagstar contends that the Taylors received their bargained-for consideration when Flagstar advanced the mortgage funds into Mortgage Plus's checking account. Third, Flagstar argues that Lanco cannot assert a claim for equitable relief where Lanco violated Ohio's "good funds" statute, R.C. 1349.21, by dispersing funds from escrow before they were available for withdrawal. Finally, Flagstar submits that the trial court erred in releasing the escrow funds to the Taylors without holding a hearing on the Taylors' motion, and before Flagstar had an opportunity to respond to the motion.
 I. Standard of Review {¶ 25} An appellate court's review of a trial court's decision to grant a motion for summary judgment is de novo.Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105,671 N.E.2d 241. Under Civ.R. 56, summary judgment is appropriate when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can reach only one conclusion, which is adverse to the party against whom the motion is made, such party being entitled to have the evidence construed most strongly in their favor. Civ.R. 56; Mootispaw v. Eckstein (1996),76 Ohio St.3d 383, 385, 667 N.E.2d 1197; Leibreich v. A.J.Refrigeration, Inc., 67 Ohio St.3d 266, 1993-Ohio-12,617 N.E.2d 1068.
 {¶ 26} Thus, the presence or absence of disputed material facts is of primary import. Material facts are defined as facts that might affect the outcome of the suit under the governing law of the case. Turner v. Turner (1993), 67 Ohio St.3d 337, 340,617 N.E.2d 1123, citing Anderson v. Liberty Lobby, Inc. (1986),477 U.S. 242, 248, 106 S.Ct. 2505. A genuine issue exists where the evidence presents a sufficient disagreement concerning the facts to require submission to a jury; however, no genuine issue exists when the dispute is so one-sided that one party must prevail as a matter of law. Turner v. Turner,67 Ohio St.3d at 340.
 {¶ 27} Initially, the party moving for summary judgment bears the burden of informing the trial court of the basis for the motion and of identifying those parts of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claim. Dresherv. Burt (1996), 75 Ohio St.3d 280, 662 N.E.2d 264. Accordingly the moving party must point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim. Id. If the moving party satisfies its burden under Civ.R. 56(C), the burden shifts to the nonmoving party to demonstrate that there is a genuine issue of a material fact. Id. However, if the nonmoving party fails to meet this burden, then the trial court may enter summary judgment against that party. Id.
 II. Case Sub Judice {¶ 28} In its decision and judgment entry, the trial court granted summary judgment to Lanco. Because Flagstar, in its brief, has confused the issues presented here, it is necessary to identify the effect of the trial court's judgment. Specifically, the trial court cancelled and released the mortgage from the Taylors to Mortgage Plus. Further, the trial court decreed that Flagstar has no interest or lien upon the real estate owned by the Taylors. Thus, we are not presented with a case where the Taylors are attempting to cancel Flagstar's mortgage based on lack of consideration. Nor are we presented with a scenario where the trial court granted an equitable mortgage to Lanco. Rather, we are presented with the issue of whether the trial court erred in canceling Mortgage Plus's recorded mortgage because the Mortgage Plus check, payable to Lanco, was dishonored for insufficient funds. Further, we are to answer whether the trial court erred in finding that Flagstar had no interest or lien against the Taylors' real estate. We answer both queries in the negative.
 A. The Mortgage Plus Check {¶ 29} As part of its closing materials, Mortgage Plus forwarded a closing packet to Lanco. Included in the packet was a check for the mortgage proceeds. However, the Mortgage Plus check was payable to Lanco, not the Taylors. Lanco was instructed to deposit the check into its escrow account and pay off the Taylors' creditors from those proceeds. This does not change the fact that the check was a negotiable instrument payable to Lanco in the amount of $108,298.58 drawn on Mortgage Plus's account at Flagstar.
 {¶ 30} Negotiable instruments do not simply appear; they are issued and transferred in the context of some commercial or consumer transaction. Quinn, Uniform Commercial Code Commentary and Law Digest (2 Ed.) 3-312, paragraph 3-601. In this sense, there are two components to transactions involving negotiable instruments: (1) the underlying transaction and (2) the negotiable instrument passed as part of the transaction. Id. R.C.1303.67(B) recognizes this relationship by providing that a party is discharged from liability on an instrument by any act or agreement which would discharge that party's simple contract for the payment of money. McGlothin v. Huffman (1994),94 Ohio App.3d 240, 640 N.E.2d 598.
 {¶ 31} In the case sub judice, Mortgage Plus's check was issued in the context of a real estate refinancing transaction. Thus, of the check is dishonored, R.C. 1303.39 (revised U.C.C. 3-310) provides that where a check is taken for an underlying obligation, "the obligation is suspended to the same extent the obligation would be discharged if an amount of money equal to the amount of the instrument were taken." R.C. 1303.39(B). The obligation continues to be suspended until the check is paid, certified, or dishonored. R.C. 1303.39(B)(2). If the check is dishonored, an action may be maintained on either the instrument or the obligation. R.C. 1303.39(B)(3).
 {¶ 32} In that sense, because Mortgage Plus's check for the mortgage proceeds was dishonored, the underlying transaction was suspended. See Miraldi v. Life Ins. Co. of Virginia (1971),48 Ohio App.2d 278, 281, 356 N.E.2d 1234 (stating that "the mere mailing of the check did not constitute payment, as its acceptance was conditional upon such check being honored upon presentation."); see, also, Westfield Mtge. Co. v. Smith (June 28, 1985), 12th Dist. No. CA83-10-039. Flagstar argues that the Taylors received consideration for the mortgage. However, that is of no significance for the dispute between Lanco and Flagstar. While the Taylors' debts were paid off as they expected, neither Mortgage Plus nor Flagstar advanced any money that went to pay those debts. The sole source of the funds that paid off the Taylors' debts was Lanco. Flagstar has presented no facts that would raise a genuine issue on this fact for trial.
 {¶ 33} In the context of a mortgage, the requirement that the mortgage funding check becomes paramount. "A mortgage is a security interest which rests upon the underlying debt."Citizens Loan Savings Co. v. Stone (1965), 1 Ohio App.2d 551,556, 206 N.E.2d 17; see, also, Division of Aid for Aged, Dept.of Pub. Welfare v. Huff (1960), 110 Ohio App. 483, 486,168 N.E.2d 316 (stating that "[a] mortgage is a lien for a debt and something more. It is a transfer of the title as security and to be void on payment."). Thus, if the check transferring the funds that give rise to the underlying debt is dishonored, it is only logical that the mortgage likewise fails.
 B. Flagstar {¶ 34} Flagstar argues in its brief that Lanco cannot now be granted an equitable mortgage because it has come to court with "unclean hands." Without presenting the crux of Flagstar's argument, we are of the opinion that it is unnecessary to address this argument for the plain reason that the trial court did not grant Lanco an equitable mortgage. The trial court merely cancelled Mortgage Plus's mortgage recorded against the Taylors' real estate.
 {¶ 35} Moreover, it is curious to us that Flagstar would raise such an argument considering their actions in this case. First, Flagstar forwarded funds into Mortgage Plus's account for the purpose of funding the Taylors' mortgage. Second, even though there were ample funds in Mortgage Plus's account at the time Lanco presented the check for payment, Flagstar purposely withheld those funds and dishonored the check.
 {¶ 36} Flagstar argues that it gave consideration to the Taylors for the mortgage when it transferred funds into Mortgage Plus's account. This argument fails on several levels. First, the Taylors did not negotiate with Flagstar for the refinancing loan. The Taylors negotiated with Mortgage Plus for the refinancing of their existing debts. Any of Flagstar's participation in the transaction was purely through Mortgage Plus. Second, even though Flagstar advanced money into Mortgage Plus's account for the purpose of funding the Taylors' mortgage, Flagstar retained control of those funds, exemplified by its ability to dishonor the instrument used to transfer those funds to Lanco.
 {¶ 37} Accordingly, it is apparent that Flagstar came to us with "unclean hands." On the other hand, Lanco did everything in its power to satisfy the Taylors and cure the default created by Mortgage Plus and Flagstar.
 C. Summary Judgment {¶ 38} As stated earlier, once the party moving for summary judgment satisfies its initial burden of demonstrating that there are no genuine issues of material fact, the burden shifts to the nonmoving party to demonstrate that there is a genuine issue of a material fact. Flagstar has failed to demonstrate in the record the existence of a genuine issue of material fact that would necessitate a trial.
 {¶ 39} Accordingly, Flagstar's First and Second Assignments of Error are overruled.
 Conclusion {¶ 40} Because there are no genuine issues of material fact, and because Lanco is entitled to judgment as a matter of law, we overrule Flagstar's assignments of error in toto and affirm the judgment of the trial court.
Judgment affirmed.
Kline, P.J., and Harsha, J., concur in judgment only.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellees recover of appellant Flagstar costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Jackson County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. Harsha, J. Concur in Judgment Only