PASSMORE et al., Appellees,

v.

UNIVERSAL UNDERWRITERS INSURANCE COMPANY et
al.; Cigna/Ace USA Property & Casualty, Appellant.

[Cite as *Passmore v. Universal Underwriters Ins.
Co.,* 163 Ohio App.3d 192, 2005-Ohio-4485.]

Court of Appeals of Ohio,
Eleventh District, Ashtabula County.

No. 2003–A–0095.

Decided Aug. 26, 2005.

Todd O. Rosenberg, for appellees.

Brian N. Ramm and Marc H. Feldman, for appellant.

WILLIAM M. O'NEILL, Judge.

{¶ 1} This appeal arises from the Ashtabula County Court of Common Pleas. Appellant, Cigna/ACE USA Property & Casualty ("ACE"), appeals the judgment of the trial court, which entered summary judgment in favor of appellees, Brian Passmore and Brandy J. Javorich, both individually and as co-administrators for the estate of Brian E. Passmore II (collectively, "appellees").

{¶ 2} On June 10, 1999, Deborah Butcher brought her personal automobile into Nassief Pontiac Cadillac, Inc. ("Nassief") in order to have it repaired. On that same date, she signed a rental agreement for the use of a rental car while her car was being serviced. The rental agreement provided that Deborah Butcher and her husband, Robert E. Butcher, were authorized drivers for the rental car, a 1999 Chevrolet Lumina, for use until June 11, 1999. The rental agreement also stated that "under no circumstances shall anyone under 21 years of age operate this vehicle."

{¶ 3} On June 13, 1999, the Butchers' 12–year–old son, Robert K. Butcher, operated the rental vehicle, with his parents' permission. According to police statements, the Butchers' son was driving the vehicle up and down their street

doing "burn-outs" and fish-tailing. As he was driving, he noticed his friend, nine-year-old David Bradnan, and Bradnan's cousin, eight-year-old Brian E. Passmore II, riding their bikes down the road. He stopped and asked them if they wanted to go for a ride. He then followed the boys to the Butcher, home where they left their bikes and fishing poles and then got in the car. Bradnan sat in the center, using the passenger-side seatbelt, while Passmore sat next to the window on the passenger side, without a seatbelt. Butcher continued driving up and down the street and, on the final pass, veered off the road into a roadside ditch, overturning the vehicle and causing Passmore to be expelled from the vehicle. Passmore died from his injuries a short time later.

{¶ 4} Following the death, appellees collected $100,000 from the tortfeasor's liability insurer and $150,000 in underinsured-motorist coverage from their personal automobile insurer.

{¶ 5} On June 8, 2001, appellees filed a complaint in the Ashtabula County Court of Common Pleas, seeking underinsured-motorist coverage from a number of defendant insurance companies including ACE and Universal Underwriters Insurance Company ("Universal"). ACE issued a business automobile insurance policy to GMAC, the owner of the rental vehicle. Universal had issued insurance policies to Nassief, which had rented the vehicle to the Butchers.

{¶ 6} ACE, Universal, and appellees all subsequently filed summary-judgment motions. In a judgment entry filed December 31, 2002, the trial court entered summary judgment in favor of appellees, finding they were entitled to underinsured-motorist coverage under both the ACE and Universal policies.

{¶ 7} On January 28, 2003, Universal appealed the December 31, 2002 judgment entry to this court.[1] This court concluded that the December 31, 2002 judgment entry was not a final appealable order, as issues remained unresolved regarding ACE's coverage and appellees' claims, and the trial court did not find there was "no just reason for delay." Thus, this court asked the trial court to make a determination as to appellees' loss-of-consortium claims under the ACE and Universal policies.

{¶ 8} On July 9, 2003, the trial court issued a judgment entry finding that its December 31, 2002 judgment entry was a final appealable order and there was "no just reason for delay." ACE then filed this present appeal of the July 9, 2003 judgment entry with this court, presenting a single assignment of error:

{¶ 9} "The trial court erred in granting plaintiffs-appellees' motion for summary judgment and in denying ACE USA's motion for summary judgment by

---

1. See companion case, *Passmore v. Universal Underwriters Ins. Co.,* 11th Dist. No. 2003–A–0016, 2005-Ohio-4484, 2005 WL 2077251.

finding that ACE USA's policy provided underinsured motorist coverage to plaintiff-appellees."

{¶ 10} We begin by noting that the standard for addressing a motion for summary judgment is set forth in Civ.R. 56(C). In order to prevail, the moving party must establish that " '(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the [nonmoving party], that conclusion is adverse to that [nonmovant].' " [2] "An appellate court applies a *de novo* standard of review when determining whether a trial court properly granted summary judgment." [3]

{¶ 11} ACE cites four bases in support of its contention that summary judgment was not proper. First, ACE contends that appellees are not entitled to underinsured-motorist coverage because the tortfeasor's liability coverage limits are higher than any underinsured-motorist coverage available under the ACE policy. Second, appellees are not insureds under the ACE policy. Third, Robert K. Butcher was not an insured under the policy because he was not acting with permission of the named insured at the time of the accident. Finally, the trial court erred in finding that underinsured-motorist coverage arose by operation of law.

{¶ 12} Regarding the first issue, ACE contends that appellees recovered a total of $250,000 from liability coverage from the tortfeasor's insurance and their own personal automobile coverage and, even if underinsured coverage arose by operation of law under the ACE policy, appellees would not recover any monies, because the tortfeasor's liability limits exceed the limit of the underinsured-motorist coverage that would be available under the ACE policy. ACE cites this court's holding in *Smock v. Hall* in support of this contention.[4] In *Smock*, this court held that "[b]ecause the tortfeasor's liability coverage was limited to $100,000 per person, the same as appellants' underinsurance coverage limit, they are not underinsured under R.C. 3937.18(A)(2)." [5]

---

2. *Leibreich v. A.J. Refrigeration, Inc.* (1993), 67 Ohio St.3d 266, 268, 617 N.E.2d 1068, quoting *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267. See, also, Civ.R. 56(C).

3. *Burkholder v. Straughn* (June 26, 1998), 11th Dist. No. 97–T–0146, 1998 WL 553623.

4. *Smock v. Hall* (1999), 132 Ohio App.3d 478, 725 N.E.2d 673.

5. Id. at 482, 725 N.E.2d 673.

■ {¶ 13} R.C. 3937.18(C) provides that underinsured-motorist coverage "shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." Therefore, any underinsured-motorist coverage that arises by operation of law must be reduced by the amount available under liability coverage received.

{¶ 14} This court has previously held that an insurer is entitled to set off any amount paid to plaintiffs by the tortfeasor's insurance policy against any amount that insurer might owe the plaintiffs pursuant to the underinsurance provisions of its policy.[6]

{¶ 15} Appellees contend that the policy defines the liability limit with the ambiguous phrase "minimum financial limits required by state law" and, thus, there can be no determination that the tortfeasor's liability limits are higher than any underinsured coverage provided by operation of law.

{¶ 16} In the case sub judice, appellees received $100,000 in liability coverage from the tortfeasor's insurance, as well as $150,000 in coverage from their own automobile policy. ACE's policy states that the liability limits are the "minimum financial limits required by state law" and refers to Endorsement No. 1, which lists the minimum financial limits per state. For Ohio, the endorsement lists the minimum liability coverage per person at $12,500.

{¶ 17} We do not find the phrase "minimum financial limits required by state law" to be ambiguous when accompanied by a reference to the endorsement, which specifically lists the Ohio minimum liability amounts. Thus, the ACE policy provides for only $12,500 in coverage, which, when set off by the $100,000 and $150,000 recovered by appellees under the tortfeasor's policy and their own policy, respectively, results in ACE having no liability under this provision, pursuant to R.C. 3937.18.

■ {¶ 18} In its second issue presented for review, ACE contends that the trial court erred in finding appellees were "insureds" under the ACE policy.

{¶ 19} The policy at issue defines "[w]ho is an Insured" as:

{¶ 20} "a. You for any covered 'auto.'

{¶ 21} "b. Anyone else while using with your permission a covered 'auto' you own, hire or borrow[.]

{¶ 22} " * * *

{¶ 23} "c. Anyone liable for the conduct of an 'insured' described above but only to the extent of that liability."

---

6. *Turner v. Erie Ins. Group* (Apr. 6, 2001), 11th Dist. No. 99–A–0045, 2001 WL 335931, at *1.

{¶ 24} ACE contends that appellees do not qualify as "you" under any of these categories as "you" refers to the named insured, in this instance GMAC on behalf of Nassief. ACE also contends that appellees are not "insureds" as they did not use the vehicle in question with the named insured's express or implied permission.

{¶ 25} Appellees contend that they are "insureds" as a matter of law because Brian E. Passmore II was a passenger in a GMAC vehicle. Moreover, appellees contend that they are "insureds" when looking at the intent of the parties, as GMAC intended to purchase coverage for occupants of its vehicles and Passmore, as a passenger, had a reasonable expectation of coverage under the ACE policy.

{¶ 26} The trial court cited *Scott–Pontzer* in support of the notion that "you" in the ACE policy created an ambiguity. Under the *Scott–Pontzer* theory of liability, the term "you" in an insurance policy was deemed ambiguous when it referred to a corporation and that "[i]t would be nonsensical to limit protection solely to the corporate entity, since a corporation, itself, cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle."[7] Therefore, the court construed the ambiguous language against the drafter and concluded that the plaintiff was an insured.

{¶ 27} Subsequent to *Scott–Pontzer,* the Supreme Court of Ohio held in *Westfield v. Galatis* that the underlying rationale in the *Scott–Pontzer* cases applies only to a loss sustained by an employee of the corporation and only if the loss occurs within the course and scope of employment.[8] The court also held that, "where a contract is ambiguous, a court may consider extrinsic evidence to ascertain the parties' intent."[9] The court also noted that ambiguities in a policy should be construed against the insurer and in favor of the insured.[10] Although the *Galatis* line of cases refers specifically to employer/employee relations, the basic principles of contract interpretation remain well settled under Ohio law.

{¶ 28} The policy at issue was issued from ACE to GMAC for use in its commercial dealings with its affiliated dealerships. The dealership at issue is Nassief, which leased the vehicle at issue from GMAC to use as a rental vehicle for its customers. Thus, the use of the word "you" in reference to the named

---

7. *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 664, 710 N.E.2d 1116.

8. *Westfield Ins. Co. v. Galatis,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, paragraph two of the syllabus.

9. Id. at ¶ 12.

10. Id. at ¶ 13.

insureds, in this instance GMAC and Nassief, is ambiguous, and we must look to the intent of the parties.[11]

{¶ 29} In issuing the policy to GMAC and its affiliated dealerships, ACE intended to provide coverage of the automobiles used in the course of business and to provide coverage not for its employees but, rather, for drivers and passengers occupying the vehicles used by customers of the business. Therefore, construing the language most favorably to the insured, appellees are insureds under the ACE policy at issue.

{¶ 30} In its third issue, ACE contends that appellees are not insureds as Robert K. Butcher was not acting with the named insured's permission at the time of the accident. We find this argument to be unpersuasive. Although Robert K. Butcher was acting only with the permission of his parents and not with the express or implied permission of GMAC or Nassief, Brian E. Passmore II is an insured and entitled to coverage as a matter of law, because he was a passenger in the GMAC vehicle. As noted above, ACE intended to provide coverage to GMAC and Nassief for all drivers and passengers using their vehicles during the course of the business. Thus, Brian E. Passmore II, as a passenger in the vehicle, was intended to be covered by the policy, regardless of the permission given to the driver.

{¶ 31} In its fourth issue, ACE contends that the trial court erred in finding underinsured-motorist coverage arose by operation of law. The trial court concluded that coverage arose by operation of law as the rejection signed by David Jones, Vice President of GMAC, failed to meet all the *Linko* requirements for rejection of coverage.

{¶ 32} *Linko v. Indemn. Ins. Co. of N. Am.* states that to properly offer underinsured-motorist coverage, the insurer must "[1] inform the insured of the availability of UM/UIM coverage, [2] set forth the premium for UM/UIM coverage, [3] include a brief description of the coverage, and [4] expressly state the UM/UIM coverage limits in its offer."[12]

{¶ 33} We agree with the trial court that the rejection form signed by GMAC does not meet the *Linko* requirements. Specifically, it does not state the premium, a description of the coverage, and its limits. Thus, there has been no valid rejection of underinsured-motorist coverage by GMAC, and, therefore, it arises by operation of law. However, as noted above under the first issue, the ACE policy provides for only $12,500 in coverage, which, when set off by the $100,000 and $150,000 recovered by appellees under the tortfeasor's policy and

---

11. *Westfield,* 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 12.

12. *Linko v. Indemn. Ins. Co. of N. Am.* (2000), 90 Ohio St.3d 445, 447–448, 739 N.E.2d 338.

their own policy, respectively, results in ACE having no liability under this provision, pursuant to R.C. 3937.18. Therefore, as underinsured-motorist coverage would arise by operation of law, the setoff provision of R.C. 3937.18 prohibits liability under the policy.

{¶ 34} Therefore, the trial court erred in entering summary judgment in favor of appellees as the tortfeasor's liability coverage limits, already recovered by appellees, was higher than the underinsured-motorist coverage available through the ACE policy provision. Thus, pursuant to R.C. 3937.18 and this court's holding in *Smock,* supra, we find that ACE's assignment of error has merit.

{¶ 35} Based on the foregoing, the judgment of the Ashtabula County Court of Common Pleas is reversed, and judgment is entered for ACE.

Judgment reversed.

FORD, P.J., concurs.

CHRISTLEY, J., concurs in judgment only.

JUDITH A. CHRISTLEY, J., retired, of the Eleventh Appellate District, sitting by assignment.

JUDITH A. CHRISTLEY, J., concurring in judgment only.

{¶ 36} For the following reasons, I concur in judgment only. Although I agree with the majority's determination that appellees are not entitled to underinsured-motorist coverage per R.C. 3937.18(A)(2), the majority incorrectly holds that appellee, Brian Passmore, was an insured passenger under the ACE insurance policy. Specifically, the majority erroneously determines that ACE intended to provide insurance coverage to *all drivers and passengers* using GMAC's vehicles.

{¶ 37} To determine whether an individual is an insured, the applicable provisions of the insurance policy must be examined to ascertain the definition of an "insured." *Moyer v. Aron* (1964), 175 Ohio St. 490, 26 O.O.2d 130, 196 N.E.2d 454, paragraph two of the syllabus. When the applicable provisions of the insurance policy are clear and unambiguous, courts cannot enlarge the coverage by implying terms that are not in the agreement. *Cincinnati Ins. Co. v. Kramer* (1993), 91 Ohio App.3d 528, 531, 632 N.E.2d 1333.

{¶ 38} Here, section (b) is the applicable provision to determine whether Brian Passmore, a passenger of the rental vehicle, was an insured:

{¶ 39} "Who is an insured

{¶ 40} "(a) You for any covered 'auto.'

{¶ 41} "(b) Anyone else while using with your permission a covered "auto" you own, hire or borrow.

{¶ 42} " \* \* \*

{¶ 43} "(c) Anyone liable for the conduct of an 'insured' described above but only to the extent of that liability."

{¶ 44} Section (b) contains the relevant policy language to determine whether Brian Passmore was an insured. The language of section (b) is unambiguous as it provides insurance coverage beyond the named insured, GMAC. Cf. *Scott–Pontzer v. Liberty Mut. Fire Ins. Co.* (1999), 85 Ohio St.3d 660, 710 N.E.2d 1116. The terms "your" and "you" refer to the rental car's owner, GMAC.

{¶ 45} That being said, the language of section (b) demonstrates that the definition of an "insured" does not encompass *all* passengers and drivers. Rather, the policy restricts coverage to those passengers and drivers who have obtained the owner's permission to use the rental vehicle. Nevertheless, the majority ignores the limitations of the policy's definition of insured under section (b) and concludes that all passengers and drivers are defined as "insureds."

{¶ 46} Accordingly, whether Brian Passmore was an insured turns upon whether GMAC, as the owner, permitted him to use the vehicle. In the case sub judice, it is evident that only Robert K. Butcher permitted Brian Passmore to use the vehicle as a passenger. There is no evidence that GMAC expressly or impliedly permitted Brian Passmore to use the rental car.

{¶ 47} The clear and unambiguous language of section (b) excluded coverage to a user of the vehicle who had not obtained the owner's permission. Because GMAC was the sole owner of the rental car, Robert K. Butcher could not provide Brian Passmore with the owner's permission to use the vehicle. See, e.g., *Cincinnati Ins. Co.*, 91 Ohio App.3d at 532, 632 N.E.2d 1333. Absent is any evidence that GMAC permitted Brian Passmore to use the rental car. Consequently, Brian Passmore was not a permitted user and not an insured.

{¶ 48} Although I agree with the majority's ultimate disposition of this matter, I disagree with its determination that Brian Passmore was an insured under the ACE insurance policy. In short, the majority's policy interpretation, which determined that Brian Passmore was an insured, enlarges the underinsured-motorist coverage beyond the unambiguous terms of the insurance policy. Thus, to the extent indicated, I concur in judgment only.